A02A1899. SANDERS v. BROWN.

(571 SE2d 532)

ELDRIDGE, Judge.

James D. Sanders, plaintiff and defendant-in-counterclaim, appeals from the judgment entered against him on the jury verdict finding for the defendant, Laura Sanders Brown, his sister, on his complaint, on her counterclaim for slander of title in the amount of $8,068.88, and on her claim for attorney fees and expenses of litigation in the amount of $37,794.20, and from the denial of his motion for new trial. Finding no merit to the appeal, we affirm.

In 1938, Sanders contended that Mrs. Effie Furr gave a bond for title for 50 acres to him; however, no bond for title was recorded or introduced in evidence. On October 31, 1942, Mrs. Furr conveyed by deed the 50 acres to Brown, reciting that the bond for title to Brown and Sanders was transferred and assigned to Brown; the Furr deed was never marked recorded. However, this deed appears as recorded on October 31, 1942, in Deed Book 149, page 402, Cobb County Records. On October 9, 1943, Brown deeded to Sanders ten acres of the Furr property in a sale, showing $1.10 in revenue stamps and reciting a purchase price of $1,000. In April 1962, Brown conveyed by sale an additional piece of the Furr property to Sanders. In March 2000, Brown contracted to sell 12.5 acres of the Furr property contingent upon rezoning the land commercial; on November 21, 2000, the rezoning was granted. Subsequently, Brown and her purchaser entered into a contract for four acres of the original 12.5 acres; neither contract closed, because of Sanders' claims.

In 1943 and again in 1962, Brown conveyed two separate parcels

---

to Sanders; however, a 1962 survey plat, drawn by Aubrey Harris and filed at the same time as the last deed, showed a triangle of land of 0.851 acres in Land Lots 765 and 790 as Sanders' land. On July 6, 1994, Brown erected a fence on this small disputed land, and Sanders sought an injunction against her. Brown answered and counterclaimed against Sanders for abusive litigation to such disputed property, after various amendments. On February 9, 1998, after many amendments, Sanders claimed that all the 50 acres of the Furr land was his and that Brown had obtained the deed fraudulently so that he equitably owned the 38.62 acres titled in Brown's name. By amendment, Sanders claimed the land in dispute by adverse possession. On May 7, 2001, by leave of court, Brown amended her counterclaim to assert a claim for slander of title for Sanders' claim to the 38.62 acres not titled in his name. No lis pendens was tendered into evidence.

From October 15 through 18, 2001, the jury heard the case and returned a verdict on the latter date. On October 22, 2001, judgment was entered. On January 16, 2002, the trial court heard Sanders' motion for new trial on general grounds, which was never amended to set forth any special grounds. On January 17, 2002, the trial court denied Sanders' motion for new trial on the general grounds.

Sanders contends that the trial court erred in denying his motion for a new trial. We do not agree.

Where the jury returns a verdict which the trial court enters as a judgment, the judgment must be affirmed on appeal if there is any evidence to support the verdict, because the jurors are the exclusive judges of the weight and credibility of the evidence; on motion for new trial, the appellate courts must construe the evidence with every inference and presumption in favor of the verdict and judgment and affirm if there is any evidence to support the verdict. *Butts v. Williams*, 247 Ga. App. 253-254 (543 SE2d 779) (2000).

Slander or libel of title to land is defined by OCGA § 51-9-11 as: "[t]he owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom." The essential elements of this tort are: (1) publication of slanderous or libelous words; (2) that they were malicious; (3) that the plaintiff sustained special damages thereby; and (4) that the plaintiff possessed an estate in the property slandered or libeled. *Schoen v. Maryland Cas. Co.*, 147 Ga. 151, 153 (93 SE 82) (1917); *Daniels v. Johnson*, 191 Ga. App. 70, 73 (2) (381 SE2d 87) (1989). An oral claim of ownership does not create a cloud on the title which can be removed by court decree; therefore, the remedy for such false claim which affects the title is an action for damages for slander or libel of title to such land. *Weyman v. City of Atlanta*, 122 Ga. 539, 542 (50 SE 492) (1905). Such cause of action

accrues when the false, slanderous, and malicious words impugning the title of the person's land are first published, causing special damages. *King v. Miller*, 35 Ga. App. 427 (133 SE 302) (1926). The owner can recover in such action only such special damages as he actually sustained as a consequence of the wrongful acts, which damages must be pled and proven with particularity. *Copeland v. Carpenter*, 203 Ga. 18, 19-20 (3) (45 SE2d 197) (1947). Costs of litigation and attorney fees arising from such action do not constitute the special damages necessary to support this action. *Hicks v. McLain's Bldg. Materials*, 209 Ga. App. 191, 192 (1) (433 SE2d 114) (1993). However, where specific figures are proven that show special damages caused by a contractor's lien with reasonable certainty, which prevented further bank construction draws, delaying completion of the house and sale of the house — for example, interest attributable to the delay or increased rate of interest, increased construction cost from inflation, cost of a bond for the lien, or difference between the fair market value if completed on time and the actual fair market value on completion, or costs directly attributable to the delay — such constitute recoverable special damages. See generally *Harmon v. Cunard*, 190 Ga. App. 19, 20 (378 SE2d 351) (1989).

(a) Sanders contends that his filing a notice of lis pendens and the lawsuit came under privileged communications. OCGA § 51-5-8; *Alcovy Properties v. MTW Investment Co.*, 212 Ga. App. 102, 103 (1) (441 SE2d 288) (1994). Under OCGA § 51-5-8, an absolute privilege is created:

> [a]ll charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous.

See *Alcovy Properties v. MTW Investment Co.*, supra at 103. "An owner of realty may bring an action for libel or slander which falsely and maliciously impugn[s] his title, if any damage accrues to him. OCGA § 51-9-11. However, this tort is subject to the privilege of OCGA § 51-5-8 accorded all regular pleadings filed in a court of competent jurisdiction." (Citations and punctuation omitted.) *Panfel v. Boyd*, 187 Ga. App. 639, 647 (4) (371 SE2d 222) (1988). Thus, any of the pleadings in this lawsuit asserting title in Sanders and not in Brown were within the litigation privilege. See OCGA § 51-5-8.

However, on September 30, 1993, Sanders rerecorded a deed, as well as a plat, in order to assert a claim to 18 feet of land titled in Brown, which became later the subject of his initial suit. In 1994,

when the Browns took the fence down and put it up at another place which Sanders claimed, Sanders called the police and told the police that he owned the land where Brown was erecting the fence. Both the recordation of the plat to claim the additional 18 feet and the oral report to the police of the claim to the land where the Browns tried to erect the fence constituted nonjudicial slander of title that did not come within the litigation privilege.

Further, on March 20, 2001, when Brown sought to rezone part of her property, Sanders made oral representations to the Board of Commissioners for Cobb County that he and not Brown owned the land sought to be rezoned to dissuade them from acting, but Sanders did not seek a restraining order from the court to prevent the rezoning. Title to this portion of the land was in litigation at this time in this suit, but Sanders' claim of ownership was made separately from the litigation, and thus, was outside the litigation privilege as well. Cf. *Skoglund v. Durham*, 233 Ga. App. 158, 159-160 (502 SE2d 814) (1998). Thus, nonprivileged writings and statements that were in evidence would authorize the jury to find slander of title.

(b) Sanders contends that Brown has failed to prove special damages proximately caused by any oral or written statement disparaging Brown's title. OCGA § 51-12-2 (b); *Hicks v. McLain's Bldg. Materials*, supra at 192. We do not agree because Brown lost two contracts for sale of the land due to the slander of title.

"Special damages are those which actually flow from a tortious act; they must be proved in order to be recovered." OCGA § 51-12-2 (b). Special damages must be proven with sufficient particularity for the jury to estimate the amount thereof with reasonable certainty; exact figures are not required for proof. *Nat. Refrigerator &c. Co. v. Parmalee*, 9 Ga. App. 725, 726-727 (1) (72 SE 191) (1911). A party can "recover only such special damages as he actually sustained as a consequence of the alleged wrongful acts, and he was required to plead them plainly, fully, and distinctly." *Copeland v. Carpenter*, supra at 20.

For Brown to show special damages from the loss of either sales contract, she had to prove that the contracts would have been performed but for the slander of title and that any contingencies in either contract were either met or waived, except for a marketable title. The main contingency of the rezoning of the land was satisfied when the Cobb County Board of Commissioners rezoned the land. Since the purchase price for the 50 acres was shown to be $2,000, her cost basis was $40 per acre; therefore, her special damages were the contract price less her cost basis per acre plus the real estate commission of ten percent.

On March 31, 2000, the Sofran Group and Brown contracted for the purchase and sale of 12.5 acres for $175,000 per acre with

$10,000 earnest money. Closing was within 30 days of the end of the inspection period of 180 days. When Brown could not cure the marketable title within the "Title Cure Period," she had to refund the earnest money less $100 so that $990 of the refund would have been real estate commission and $8,910 would have been the balance from the seller. However, on July 8, 2001, the contracting parties agreed to extend the closing date to January 15, 2002. On January 9, 2002, the parties entered into a new contract for the purchase and sale of only four acres at $195,000 per acre contingent upon conveying a marketable title. But the earnest money of $9,900 had to be returned, because Brown could not give a good and marketable title to the land, because of Sanders' claims. However, since the rezoning of the 12.5 acres of land, this land has increased in value. The jury found $8,068.88 in special damages for Brown, which was less than her share of the earnest money that had to be returned. Thus, there was evidence shown with reasonable particularity to support the verdict for special damages.

(c) Sanders contends that Brown had no viable independent counterclaim to authorize the award of attorney fees and expenses of litigation. The award of expenses of litigation under OCGA § 13-6-11 can only be recovered by the plaintiff in an action under the language of the statute; therefore, the defendant and plaintiff-in-counterclaim cannot recover such damages where there is a compulsory counterclaim. See *Alcovy Properties v. MTW Investment Co.*, supra at 104 (5); *White v. Lance H. Herndon, Inc.*, 203 Ga. App. 580, 581 (4) (417 SE2d 383) (1992). However, if the counterclaim is an independent claim that either arose separately from the plaintiff's claim or arose after plaintiff's claim, then a plaintiff-in-counterclaim may recover expenses of litigation. *Vogtle v. Coleman*, 259 Ga. 115, 117 (3) (376 SE2d 861) (1989).

On April 30, 2001, the trial court granted Brown leave to file a counterclaim for slander of title, because such claim arose after the lawsuit was first filed. While the slander of title could not be based upon Sanders' claim for fraud in the lawsuit, it could be based upon Sanders' representations that he owned all the land being rezoned to the Cobb County Board of County Commissioners made to prevent the rezoning. While this basis for slander of title was never raised directly either in the counterclaim or pre-trial order, which only reference Sanders' claim of ownership, such evidence was introduced at trial without objection; therefore, the pleadings were amended by the evidence at trial. OCGA § 9-11-15 (b); *Brackett v. Cartwright*, 231 Ga. App. 536, 537-538 (1) (499 SE2d 905) (1998); *Rockdale Body Shop v. Thompson*, 222 Ga. App. 821, 822-823 (2) (476 SE2d 22) (1996).

Thus, Brown had an independent claim for slander of title, which arose after the institution of Sanders' suit and amendment

asserting fraud, which was not a compulsory counterclaim. OCGA § 9-11-13 (e); *Wagner v. Howell Enterprises*, 184 Ga. App. 394, 395 (2) (361 SE2d 698) (1987). When a subsequent arising counterclaim is sought to be pled, the trial court must exercise its discretion to allow it, and it constitutes an independent and permissive counterclaim. *Jenkins v. Martin*, 142 Ga. App. 573, 575 (236 SE2d 542) (1977).

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 23, 2002.

*Donald L. Mize*, for appellant.

*Moore, Ingram, Johnson & Steele, John H. Moore, Amy K. Weber*, for appellee.