A05A0605. LEE v. WASHINGTON SQUARE HOMEOWNERS'
ASSOCIATION, INC. et al.
(615 SE2d 210)

ANDREWS, Presiding Judge.
 Robert A. Lee, Jr. appeals from the trial court's grant of summary judgment to the Washington Square Homeowners' Association, Inc. (the Association), two board members of the Association,[1] Planned Community Services (PCS) (the management company hired by the Association), and PCS' individual property manager[2] on Lee's claims of defamation, negligence and slander of title arising from the filing of a lien by the Association.
 "Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). A defendant moving for summary judgment may put forth evidence to show there is no issue of fact as

---

 to one or more elements of the plaintiff's cause of action or demonstrate that the record lacks sufficient evidence to support one or more of plaintiff's causes of action. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). We review the grant or denial of summary judgment de novo, construing the evidence in favor of the nonmovant. *Matjoulis*, supra.

So viewed, the evidence here was that Lee purchased his townhouse at Washington Square in 1990. As an owner, Lee and his property were subject to the Declaration of Covenants and Restrictions of Washington Square and the Bylaws of the Association, a Georgia nonprofit corporation. Pursuant to the Declaration, the Association was authorized to collect assessments from its members for maintenance and upkeep of the common properties of the development.

Lee began using automatic bank-issued checks to make assessment payments in December 1999. Lee received a payment book from the Association every year for his assessments and that book included the address to which payments were to be sent. The address for payments was changed by the Association in December 2000, and Lee acknowledged that he did receive a payment book containing the new address, but he did not receive a separate document notifying him of this change. As a result, the bank continued to send the payments to the old address and late payments were charged to Lee's account from December 2000 through May 2001. Also, a late payment for his June 1995 payment remained pending on his account because Lee refused to pay it. Lee was mailed late fee notices by PCS if the payments arrived after the 20th of the month. Because he felt he was being harassed, Lee did not open the notices, beginning in January 2001. Finally, in May 2001, Lee opened one of the statements from PCS which contained a copy of his April check, which had been accepted, and stated that if he did not include a payment slip and mail it to the new address, his checks would be returned.

As of May 1, 2001, Lee had fallen behind $269 in his payments of assessments to the Association. As a result, the Association contacted its attorney, Mark Moore at Weissman, Nowack, Curry & Wilco, P.C.,[3] requesting that a demand letter be sent and a lien filed against Lee's property. On May 24, 2001, Moore sent a demand letter to Lee regarding the past due assessments and demanding payment within 30 days. He also sent to the DeKalb County Clerk of Superior Court a lien for recording on Lee's property. That lien was recorded on June 8, 2001.

---

[3] Lee's claims against Moore and his firm were dismissed in December 2003.

On May 20, 2001, Lee sent a check for $500 to Washington Square, which created a surplus of $300 in his account. No notification of this payment was given to attorney Moore before he sent the demand letter and lien. Lee placed his unit for sale in August 2001. In September 2001, Lee discovered the lien on file while researching property in DeKalb County. The lien was marked satisfied by Moore in February 2002. Lee sold his property in February 2003, and there was no issue regarding the lien encountered in the sale.

In 2002, Lee, pro se, filed a lawsuit in Fulton County against the same parties. Lee filed a voluntary dismissal of that suit on August 23, 2002.

1. By order of February 20, 2004, the trial court granted summary judgment to defendants on Lee's defamation[4] and negligence claims. In his first enumeration of error, Lee argues that the trial court erred in finding that he did not present evidence to show that defendants' negligence caused him to sustain monetary damages.

The trial court concluded that, on the negligence claim, Lee had failed to establish that defendants breached a legal duty to him and that he suffered injury as a result.

Lee alleged that the Association, PCS, and the individuals breached a duty to "behave reasonably in the keeping of Washington Square's accounts, communicating with each other regarding the status of any accounts referred to debt collectors, the collection of alleged debts, filing or causing to be filed liens, and promptly and effectively canceling the Lien."

Here, the relationship between Lee, the Association, and its board members was that contained in the Declaration of Covenants and Restrictions and Bylaws of the Association. Such covenants on real estate run with the title to the land and are specialized contracts which inure to the benefit of all property owners. *Rice v. Lost Mountain Homeowners Assn.*, 269 Ga. App. 351, 354 (3) (604 SE2d 215) (2004); *Duffy v. Landings Assn.*, 245 Ga. App. 104, 106-107 (536 SE2d 758) (2000).

> It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, *if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of the contract to avoid harming him. Such duties may arise from statute, or flow from relations created by contract, express or*

---

[4] No argument is presented here regarding the defamation claim.

*implied.* The violation of any such specific duty, accompanied with damage, gives a right of action. In order to maintain an action ex delicto because of a breach of duty growing out of a contractual relation the breach must be shown to have been a breach of a duty imposed by law and not merely the breach of a duty imposed by the contract itself.

(Citations and punctuation omitted; emphasis supplied.) *Waldrip v. Voyles*, 201 Ga. App. 592, 593 (1) (411 SE2d 765) (1991); see also *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 188 (5) (450 SE2d 452) (1994), quoting *Waldrip*, supra.

Here, Lee has not shown any duty owed to him by the Association and its board members beyond the requirements of the contract. Nothing has been demonstrated regarding any duty of PCS and its manager toward Lee, since PCS' contract was only with the Association. Lee failed to come forward with any legal authority or facts which would create a duty to him beyond the contract. *CSX Transp. v. Deen*, 269 Ga. App. 641, 643 (1) (605 SE2d 50) (2004); *Robertson v. MARTA*, 199 Ga. App. 681, 683 (405 SE2d 745) (1991). There was no error in the trial court's grant of summary judgment on this basis.

To the extent that Lee argues here legal theories and facts in support of his argument that were not presented below, we will not consider them. *Pfeiffer v. Dept. of Transp.*, 275 Ga. 827, 828 (2) (573 SE2d 389) (2002).

2. In his second enumeration, Lee contends that the trial court erred in its order of August 5, 2004, in granting summary judgment to the defendants on his slander of title claim.

In December 2004, following the grant of summary judgment to defendants on his defamation and negligence claims, Lee amended his complaint to add a slander of title claim. Defendants' motion for summary judgment regarding this claim was granted by the trial court.

> OCGA § 51-9-11 defines slander of title to land: "the owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom." The essential elements of this tort are: (1) publication of slanderous or libelous words; (2) that they were malicious; (3) that the plaintiff sustained special damages thereby; and (4) that the plaintiff possessed an estate in the property slandered or libeled. [*Sanders v. Brown*, 257 Ga. App. 566, 567 (571 SE2d 532) (2002).]

*Premier Cabinets v. Bulat*, 261 Ga. App. 578, 583 (6) (583 SE2d 235) (2003).

The trial court concluded, and we agree, that Lee was unable to bring forth evidence to satisfy the requirements of malice and special damages.

During his deposition on January 6, 2004, Lee testified as follows concerning malice and damages:

Q: . . . Why do you believe the Defendants collectively, not just Cameron Reebals but collectively, maliciously wanted to harm you by putting a lien on the property?
A: I can't speak to their motivations.
Q: . . . But it is your perception that they set out maliciously to harm you?
A: Set out maliciously to harm me? No, no.
Q: Okay. But they did maliciously harm you?
A: Their actions were malicious in their — the fact that they were knowledgeable of facts that should have prevented injuries that I incurred. . . .
Q: . . . Is it your contention that Cameron Reebals or Claudia Stecker told PCS to put a lien on your property so that you would have a difficult time or to harm you?
A: No. . . .
Q: . . . And do you believe that Claudia Stecker and Cameron Reebals at any point said to PCS, do this so that we can harm Robert?
A: . . . No.

Following the filing of defendants' motion for summary judgment on this claim, Lee filed an affidavit in which he stated that

I never stated, nor do I believe that Cameron Reebals and Claudia Stecker did not intend to harm me. . . . I do not believe that [they] began with an intent, or started with an intent to harm me[, but] I do believe that [they], and possibly at different points and for personal reasons, intended to harm me and acted on that intent by not contacting their attorneys to stop the filing of the lien or withdraw the filing of the lien against my property when they were fully aware of the circumstances.

The trial court properly concluded that the latter testimony was to be disregarded as contradictory under the rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986). *Insignia/ESG v. Reproductive Biology Assoc.*, 269 Ga. App. 120, 124 (603 SE2d 434) (2004).

Therefore, Lee failed to show the requisite malice.

Also, there was no proof of special damages, i.e., "those which actually flow from a tortious act." OCGA § 51-12-2 (b). Costs of litigation and attorney fees arising from slander of title do not constitute such special damages. *Sanders v. Brown*, supra at 568.

Although, in his amendment alleging slander of title, Lee claimed that he had incurred medical expenses of $2,753.40, that amendment was not verified and there is no documentation of medical expenses contained in the record.

When the summary judgment stage was reached on the slander of title claim, Lee's special damage claim was reduced to the $10 fee assessed by Washington Square for filing the lien and included in the lien amount. That fee, however, was assessed *prior* to the filing of the lien and cannot be said to be special damages flowing from the filing. Compare *Sanders v. Brown*, supra, with *Daniels v. Johnson*, 191 Ga. App. 70, 73 (381 SE2d 87) (1989) (that lien made the owner "look bad" was not special damages).

There was no error in the grant of summary judgment on this claim.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED MAY 23, 2005.

*David E. Betts*, for appellant.

*Weissman, Nowack, Curry & Wilco, Derek W. Johanson*, for appellees.