A09A2291. M&M MORTGAGE COMPANY, INC. et al.
v. GRANTVILLE MILL, LLC et al.
(690 SE2d 630)

ANDREWS, Presiding Judge.

M&M Mortgage Company, Inc., a commercial mortgage broker, sued Grantville Mill, LLC claiming that Grantville breached a written contract to pay M&M a brokerage fee to obtain Grantville a loan in the amount of at least $2,500,000 to be secured by real

property owned by Grantville. M&M also named various individuals as defendants based on personal guaranties of the brokerage fee.[1] Grantville and the individual defendants denied liability; counterclaimed against M&M for fraud and slander of title; and moved to add Michael D. Randles, president of M&M, as a defendant and joint tortfeasor in the counterclaim. After the trial court granted the motion to add Randles, the case was tried in a bench trial. M&M and Randles appeal from the judgment entered in favor of Grantville and the individual defendants on M&M's breach of contract claim and on the counterclaims.

1. Randles claims that, as to the counterclaims against him, venue was improper in the Coweta County Superior Court, where M&M filed the breach of contract action. After the Coweta County court granted the motion to add Randles as a defendant and joint tortfeasor in the counterclaim,[2] and he was served in the action, he filed a motion asserting lack of venue in Coweta County and seeking to have the counterclaim against him severed and transferred to a court with venue in DeKalb County where he resided. See *McCabe v. Lundell*, 199 Ga. App. 639 (405 SE2d 693) (1991); *McCormick v. Rissanen*, 177 Ga. App. 623 (340 SE2d 268) (1986). The trial court denied the motion.

Under the Georgia Constitution, venue generally lies in a civil case in the county where the defendant resides. Ga. Const. of 1983, Art. VI, Sec. II, Par. VI; *Kennestone Hosp. v. Hopson*, 264 Ga. App. 123, 124 (589 SE2d 696) (2003). The venue provisions of the Constitution also provide that a suit against joint tortfeasors residing in different counties may be tried in either county. Ga. Const. of 1983, Art. VI, Sec. II, Par. IV; accord OCGA § 9-10-31. The counterclaim against M&M and Randles alleged they were joint tortfeasors, but neither of them resided in Coweta County. It was undisputed that Randles resided in DeKalb County. As to M&M, the record shows that it was a domestic corporation that maintained a registered agent and office in Fulton County and a "principal office" in DeKalb County, but maintained no office in Coweta County. For purposes of venue, M&M resided in Fulton County or DeKalb County (we need not decide which), but not in Coweta County. OCGA § 14-2-510 (b); *Coastal Transport v. Tillery*, 270 Ga. App. 135, 136-138 (605 SE2d 865) (2004). Nevertheless, by filing the breach of contract action in Coweta County Superior Court, M&M submitted itself to that court's jurisdiction and venue on the

---

[1] The individual defendants were Larry R. Witt; Herbert P. Witt; James A. Green, Jr.; Mark A. Green; and James A. Green (members of the Grantville LLC).

[2] Randles opposed the motion to add him as a defendant-in-counterclaim pursuant to OCGA §§ 9-11-13 (h) and 9-11-19, but that issue was not raised in this appeal.

counterclaim. *Kennestone Hosp.*, 264 Ga. App. at 124-125. But that did not make M&M a resident of Coweta County for purposes of the constitutional venue provisions. Because M&M did not reside in Coweta County, the constitutional joint tortfeasor venue provision did not apply to subject Randles to trial with M&M on the counterclaim in Coweta County. As an individual resident of DeKalb County, Randles was entitled under the constitutional venue provisions to be sued in DeKalb County. Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. In the absence of proper venue on the counterclaim against Randles, the trial court erred in denying Randles's motion to transfer to a proper venue. The judgment against Randles on the counterclaim is vacated, and the case is remanded for entry of an order transferring the counterclaim against Randles to a proper venue. *Miller v. Bryant*, 266 Ga. 584, 585-586 (468 SE2d 762) (1996); *Lee v. Xerox Corp.*, 193 Ga. App. 432 (387 SE2d 653) (1989).

2. M&M contends that the trial court erred by rendering judgment against its breach of contract claim and in favor of the counterclaim against it seeking rescission of the contract on the basis of antecedent fraud. The trial court found that, because M&M failed to establish that it obtained Grantville a loan of at least $2,500,000, as required under the terms of the contract, M&M was not entitled to the brokerage fee under the contract. The court also found that, because M&M (acting through Randles) induced Grantville to enter into the contract by fraudulently representing that it could obtain a lender and close on the loan within one week, Grantville was entitled to rescission of the contract and to judgment for $25,000 initially paid to M&M under the contract.

> Appeals from bench trials, where the trial judge sits as the trier of fact and has the opportunity to assess the credibility of the witnesses, are reviewed under the clearly erroneous standard. We will not disturb a trial court's findings if there is any evidence to support them.

(Citations omitted.) *Jenkins v. Sallie Mae, Inc.*, 286 Ga. App. 502 (649 SE2d 802) (2007).

The evidence, viewed in the light most favorable to the trial court's judgment, showed that M&M entered into the contract with Grantville on December 5, 2006, and that it eventually obtained a loan for Grantville in the amount of $2,100,000 no sooner than January 12, 2007. Grantville refused to close on this loan because it was for an amount $400,000 less than the minimum amount required by the contract. Although M&M presented testimony through Randles that it intended to loan Grantville the remaining $400,000, Grantville presented testimony that M&M never men-

tioned this until after it had unsuccessfully attempted to obtain a larger loan with another lender and filed a lien over Grantville's real property. There was also evidence showing that, prior to entry into the contract, Randles told Grantville that M&M could obtain the required loan within one week. The trial court found that this was a false representation that M&M knew would not take place, and that it was made to induce Grantville to enter into the contract and pay the initial $25,000. We find there was evidence to support the trial court's judgment that the contract was induced by fraud and that Grantville was entitled to rescission and return of the $25,000. *Brown v. Techdata Corp.*, 238 Ga. 622, 624-626 (234 SE2d 787) (1977); *State Farm Mut. Automobile Ins. Co. v. Health Horizons*, 264 Ga. App. 443, 447-448 (590 SE2d 798) (2003).

We also find there was evidence to support the trial court's award of $15,000 in general damages for fraud. General damages, which are presumed to flow from any tortious act, may be recovered without proof of any specific amount. *Cavin v. Brown*, 246 Ga. App. 40, 43 (538 SE2d 802) (2000). "Instead, evidence may be submitted from which the [trier of fact] may fairly estimate the amount of general damages that will reasonably compensate for the wrong done." (Punctuation omitted.) *In re Estate of Zeigler*, 295 Ga. App. 156, 159 (671 SE2d 218) (2008). A broad range of general damages may flow from fraud. *Cavin*, 246 Ga. App. at 43. Evidence showed that Grantville quickly needed at least a $2,500,000 loan to pay off an existing loan and to fund business activities; that, when Grantville entered into the contract with M&M, it relied on the fraudulent representation that M&M could obtain the loan in one week; and that a lien filed by M&M over Grantville's real property pursuant to the contract (later determined to be a false lien) made it difficult for Grantville to obtain the needed loan. We find no error in the award of general damages on the fraud counterclaim.

3. M&M claims that the trial court erred by entering judgment against it for general damages of $10,000 and special damages of $9,922.93 on the slander of title counterclaim.

Claiming that it earned a broker's fee under the written contract, M&M recorded a lien for the claimed fee in the amount of $352,000 over Grantville's real property. Prior to the present action, Grantville filed a petition pursuant to OCGA § 44-14-320 seeking removal of the lien as nonconforming, and obtained a court order cancelling the lien as nonconforming at a cost to M&M of $9,922.93 in attorney fees. The slander of title counterclaim in the present action was based on the allegation that M&M filed a false $352,000 lien over Grantville's real property.

An action for libel or slander of title is set forth by statute in OCGA § 51-9-11, which provides that "[t]he owner of any estate in

lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom." To establish this claim, the plaintiff must prove possession of an estate in the subject property; publication of defamatory words against the property; that the words were false and malicious; and that the plaintiff thereby sustained special damages by loss in the value of the slandered property. *Latson v. Boaz*, 278 Ga. 113, 114 (598 SE2d 485) (2004); *Sanders v. Brown*, 257 Ga. App. 566, 568 (571 SE2d 532) (2002). Even if the evidence was sufficient to prove that the lien M&M recorded over Grantville's property constituted false and malicious publication of defamatory words against the property (*Daniels v. Johnson*, 191 Ga. App. 70, 73 (381 SE2d 87) (1989)), there was a lack of evidence of special damages resulting therefrom. Attorney fees incurred by Grantville in the amount of $9,992.93 to remove the lien from the property in the prior proceeding did not constitute special damages, an essential element necessary to sustain the action. *Hicks v. McLain's Bldg. Materials*, 209 Ga. App. 191, 192 (433 SE2d 114) (1993); *Latson*, 278 Ga. at 115. General evidence that the lien hindered Grantville's ability to obtain a loan was also insufficient to establish special damages. Id.; *Sanders*, 257 Ga. App. at 568. The trial court's award of special and general damages on the slander of title claim is reversed.

*Judgment affirmed in part, reversed in part, and vacated and remanded in part. Miller, C. J., and Barnes, J., concur.*

DECIDED JANUARY 14, 2010.

*Jones & Walden, Louis P. Owens III*, for appellants.
*Glover & Davis, Peter A. Durham*, for appellees.