## 29518, 29519. HORNER v. SAVANNAH VALLEY ENTERPRISES, INC.; and vice versa.

INGRAM, Justice.

This appeal and cross appeal arise out of a dispute involving a contract for the sale of the Royston Motel and Restaurant in Franklin Springs, Georgia. The purchaser sued to recover monies paid by him to the seller and to have the contract declared void and unenforceable because it is too vague and indefinite. The seller counterclaimed for specific performance[1] of the contract by the purchaser and for recovery of various losses in addition to a judgment that the contract purchase price of $150,000 was fair and equitable. Both parties moved for summary judgment. The trial court denied the purchaser's motion, which asserted the contract was too vague and indefinite to be enforceable, partially granted the seller's motion by adjudging the contract to be valid and binding, but denied other grounds of the seller's motion.

The trial court ruled that "issues of fact remain for a jury trial as to whether or not the contract price of $150,000 is fair and equitable and, if not, the amount of damages, if any, to which [the seller] would be entitled, it appearing that [the purchaser] had sole possession, use, control and income from the property for a period of several months." Each party appeals the trial court's adverse rulings on their respective motions for summary judgment. We affirm the trial court on the main appeal by the purchaser and on the cross appeal by the seller.

The sales contract incorporated, where not inconsistent, the terms of a prior written option between the parties and provided the purchaser would take possession of the property on November 1, 1973, when an inventory of supplies was to be taken and paid for by the purchaser. The purchaser paid $3,000 for the supplies on hand and a $25,000 down payment to the seller leaving a

---

[1]See *Warren v. Camp,* 232 Ga. 681 (1) (208 SE2d 489) (1974), regarding vendor's right to seek specific performance.

balance owed of $125,000. Under the contract, the purchaser was to arrange permanent financing for the balance owed, but if not done within 60 days the seller was to arrange financing with the purchaser's cooperation. If the seller failed to secure financing for the balance within 90 days, the purchaser was to commence liquidating the balance at the rate of $1,000 a month until permanent financing over a 10-year period could be arranged. The contract provided for the purchaser to be responsible to the seller for interest on all monies owed from November 1, 1973, at 8 percent per annum with all payments applied first to interest.[2] The purchaser took possession as provided in the contract and remained in possession until on or about June 6, 1974, when he moved out and abandoned the property. The purchaser made two of the $1,000 payments to the seller before repudiating the contract.

### Main Appeal.

Both parties agree the description of the property contained in the sales contract is legally sufficient. However, the purchaser contends that the financing terms of the contract are so vague and indefinite that the contract is unenforceable under *Hicks v. Stucki,* 109 Ga. App. 723 (137 SE2d 399) (1964), and *Collins v. Wright,* 119 Ga. App. 4 (165 SE2d 878) (1969). The purchaser also

---

[2]The exact terms of this part of the contract provide as follows:

"1. Purchaser shall arrange for financing within sixty (60) days from date if possible, if not, sellers shall be responsible for arranging for financing with the full cooperation of purchaser.

"2. If financing cannot be arranged within ninety (90) days from date purchaser shall commence liquidating the loan at the rate of $1,000 per month until permanent financing for ten (10) years can be arranged.

"3. Purchaser shall be responsible to sellers for interest from November 1, 1973, on all monies owed at the rate of eight-percent (8%) per annum.

"4. All payments shall apply first to interest and then to principal."

argues that the sales contract infers there may be two types of financing, one by a third party and another by deferred payments to the seller, and that this alternative arrangement is impermissible under *Thomas v. Harris,* 127 Ga. App. 361 (193 SE2d 260) (1972), which requires the contract to state definitely what type of financing was contemplated by the parties.

In *Hicks v. Stucki,* supra, the Court of Appeals held that a contract providing for a first mortgage or second mortgage loan or loans was too vague and indefinite where the language furnished no key from which it might be ascertained what property was to be the subject of the mortgage, or mortgages, to whom the mortgage, or mortgages, were to be given, the amount of the mortgage, or mortgages, and the failure to state whether or not the monthly payments included interest on the loans. In the present case, we interpret this sales contract to provide that title is to remain in the seller until the purchaser either obtains a loan to his satisfaction, or until the purchase price is paid off at a specified rate of $1,000 per month, including interest at 8 percent per annum with all payments applied first to interest. In *Collins v. Wright,* supra, also relied on by the purchaser, a contract was held void as unenforceable because the terms of the contract were incomplete. The contract in the present case clearly specifies an interest rate of 8 percent per annum and the specific sum to be paid monthly to the seller to retire the balance owed by the purchaser. Its payment terms are capable of performance if the contract is otherwise found to be fair to the parties.

But the purchaser contends that after taking possession of the property and making two of the $1,000 per month payments, he felt the contract was too vague and indefinite and that the seller had no intention of conveying the title to him. The purchaser argues that the contract does not expressly state that title to the property would be retained by the seller, nor does it state exactly what was to be done in the event financing from a third party could not be arranged except that he was to pay $1,000 per month to the seller. Therefore, the purchaser concludes the contract is too vague and indefinite to be enforceable.

The evidence considered by the trial court shows that the purchaser was unable to obtain financing to his satisfaction within the 60-day period specified in the contract and that subsequently the seller was unable to secure financing acceptable to the purchaser within 90 days thereafter. Thus, Paragraphs 2, 3 and 4 of the contract became effective and thereafter the purchaser made two monthly payments of $1,000 each to the seller. The scheme of deferred payments to the seller provided in the contract are not indefinite because the sums are fixed amounts. The balance owed to the seller was known, the interest rate was known and the amount of each monthly payment was specified. Using these known figures, no difficulty is encountered in computing the exact amount of principal and interest payable by the purchaser to the seller and the total time period required for these payments to liquidate the balance owed under the contract.

We do not read *Thomas v. Harris,* supra, to hold that in a real estate sales contract the parties may never provide for a specific alternative means of financing the payment of the balance of the purchase price to the seller. That case holds that the financing terms of the particular contract there involved were too vague and that an inference of third party financing was impermissible. The present contract provides for a specific alternative method of payment of the balance owed by the purchaser in definite terms and it is not too vague to be enforceable by the seller.

The fact that the seller, under the provisions of the contract, retains title to the property during the period of payment by the purchaser does not render the contract vague and indefinite. The purchaser, although not acquiring legal title until all payments have been made, increases his equitable interest in the property monthly while the seller retains legal title to secure the payment of the purchase money. Cf. *Carter v. Johnson,* 156 Ga. 207, 210 (119 SE 22) (1923); *Waldroup v. State,* 198 Ga. 144, 146 (30 SE2d 896) (1944). See also, Dobbs, Remedies, § 12.15 (1973); Anno. 33 ALR2d 1384. As stated by Professor Dobbs, "In some instances the purchaser of land will pay all or part of the purchase price before he receives

title to the land. In such case the vendor, of course, has an obligation to convey at a later date. The purchaser, with a contract right to the land has a vendee's lien on it to secure repayment of the purchase price if such conveyance is not made . . . As with the vendor's lien, numerous explanations have been advanced to justify it. It has been said that 'natural equity' gives the vendee a lien, or that it springs from an implied trust, or that it results because a purchaser who paid all the price would be equitable owner of the land and hence one who pays some portion of the price must be owner pro tanto." Dobbs, supra, at 869.

The vendor's equitable lien referred to by Dobbs was abolished in Georgia in 1863 with the adoption of the first Code. See Code § 67-1703. However, its abolition did not dispense with the natural equity acquired by the purchaser through payment of the purchase money as the law recognizes that title is held in trust for the purchaser. Code § 108-106 (1). Therefore, we hold the trial court correctly denied the purchaser's motion for summary judgment and granted that part of the seller's motion that the contract was a valid contract.

Cross Appeal.

The seller cross appeals from that portion of the trial court's order denying, in part, its motion for summary judgment. The trial court, on this issue, held that a question remained for trial as to whether the contract price for the sale of the property was fair and equitable and, if not, the amount of damages, if any, which the seller would be entitled to recover by virtue of the purchaser's use of the property.

The seller's contention is that Code § 37-805 does not apply to a vendor seeking specific performance. The statute is said to refer only to an inadequacy of price as the basis for refusing specific performance, not inadequacy of consideration. Thus the seller argues that § 37-805 is necessarily limited to cases where the vendee seeks specific performance. Additionally, the seller contends that since a specific performance action by a vendor results in a money judgment, like a damage suit, there is no need to apply the rationale of § 37-805 because full damages will not be denied because of an inadequacy of consideration in a suit for damages. Code §§ 20-307,

37-807.

The statute embraces more than inadequacy of price. It also covers the fairness of the contract as to both parties. "Mere inadequacy of price, though not sufficient to rescind a contract, may justify a court in refusing to decree a specific performance; so also any other fact showing the contract to be unfair, or unjust, or against good conscience." Code § 37-805. On the question of comparative recoveries in an action for specific performance and in an action at law for damages, see Dobbs, supra, § 12.13, pp. 860-61.

In a motion for summary judgment on the issue of specific performance, the trial judge must determine whether any issues of fact remain for the jury as to the fairness of the contract. The issue of fairness of the contract was raised at the hearing by the purchaser. The trial judge determined that issues of fact did remain as to the fairness of this contract and denied that portion of the seller's claim for specific performance. We find no error in this ruling by the trial court. Cf. *Deal v. Dickson,* 231 Ga. 366, 367 (1).(202 SE2d 41). In view of this conclusion, it is not necessary to consider the purchaser's final contention that the trial court erred in considering a "late" affidavit relating to the value of the property which was filed by the seller.

*Judgment affirmed. All the Justices concur, except Gunter, J., who concurs in the judgment only.*

Argued January 15, 1975 — Decided May 13, 1975.

*Tom Strickland,* for appellant.

*E. Freeman Leverett, Floyd W. Keeble, Jr.,* for appellee.