39585. PALMER v. FORREST, MACKEY & ASSOCIATES, INC. et al.
39759. SHIVER et al. v. CITIZENS BANK OF AMERICUS et al.

HILL, Chief Justice.

This appeal involves the relative priorities of an asserted equitable lien, materialmen's liens, and a deed to secure debt.

On January 7, 1982, Forrest, Mackey and Associates, Inc., a real estate company (the realtor), sold Lot 4 of Hidden Lakes Subdivision to Roby and Mackey Contractors, Inc. (the builder), by warranty deed. On January 11, 1982, the builder obtained a $64,000 construction loan from, and gave a deed to secure debt on Lot 4 to, Citizens Bank (the lender). This security deed was recorded on January 22, 1982, but the lender failed to record the warranty deed which had been entrusted to it by the builder for recording. The builder commenced construction of a house for resale on Lot 4.

On February 26, 1982, Frank Palmer (purchaser), having obtained from the lender an acceptable interest rate, contracted with the builder to construct the house on Lot 4 for $83,000 and paid $20,000 cash as a downpayment. The lender had agreed to loan the purchaser $40,000 at closing. However, the purchaser was not informed that there was a construction loan and security deed on the property and the purchaser contends he was advised by the builder that there were no liens on the property.

On March 12, 1982, the purchaser paid the builder an additional $10,000 toward the purchase price and later paid independent contractors $10,632 loaned by the lender, for a swimming pool and other improvements.

On June 17, 1982, the builder informed the purchaser that the builder was going into bankruptcy without completing construction of the house and offered to deed the property to the purchaser subject to the $64,000 construction loan. This was the first time the purchaser learned of the existence of this loan. In view of the purchaser's investment in the property, this offer was refused.

The purchaser filed suit on June 25, 1982, seeking to establish an equitable lien on the property, naming the realtor, the record titleholder, as defendant. On July 2, 1982, a quitclaim deed from the realtor to the builder was executed and recorded, and on July 9 the lender commenced foreclosure proceedings. The purchaser then added the lender and the builder as defendants. Shiver Lumber Company and other materialmen of the builder were allowed to intervene. The foreclosure was allowed to proceed and the sale produced $75,000 now held by the lender subject to the claims advanced in this litigation.

Thereafter, the lender's motions for summary judgment as against the purchaser and materialmen were granted and the purchaser and materialmen appeal.

1. The purchaser argues that his equitable lien in the property attached when he made the first payment of $20,000 on February 26, 1982. He also contends that the lender's security deed was effective as to him, a third party without notice of the security deed, only after the quitclaim deed from the realtor to the builder was recorded on July 2, 1982. He reasons that since he is a third party under OCGA § 44-2-2 (b) (Code Ann. §§ 67-2501, 67-2503), which provides that liens or deeds which must be recorded and are not, are effective only from the time they are filed,[1] the builder only effectively acquired title on July 2, 1982, and that therefore the lender's security deed was perfected as after acquired property only on that date. Consequently, the purchaser urges that the security deed is inferior to his lien of February 26, 1982. Compare *Murray v. Chulak,* 250 Ga. 765, 769 (300 SE2d 493) (1983).

This argument might be valid if the purchaser had dealt with the realtor as the owner of the property. See OCGA § 44-2-2 (b) (Code Ann. §§ 67-2501, 67-2503), supra. It is clear, however, by his dealings

---

[1] OCGA § 44-2-2 (b) (Code Ann. §§ 67-2501, 67-2503) provides: "Deeds, mortgages, and liens of all kinds which are required by law to be recorded . . . and

with the builder, the realtor and the lender, that the purchaser was aware of the fact that the builder owned the property. The purchaser contracted with the builder and in his testimony the purchaser admitted that he thought at all times that the builder owned the property.[2] Therefore, the purchaser cannot claim priority by virtue of the lender's failure to record the deed from the realtor to the builder, and as between the purchaser, the builder and the lender, the lender's previously recorded security deed has priority over the purchaser's equitable claim.

While we recognize the equitable principle that "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss," OCGA § 23-1-14 (Code Ann. § 37-113), we do not find that the injury was solely due to the lender's failure to record the warranty deed from the realtor to the builder. As the purchaser argues, if he had checked the title to Lot 4 he would have found that the builder was not the owner of record. Such finding should have put the purchaser on notice not to contract with the builder, at least not until after the builder acquired record title. Hence the purchaser enabled the builder to inflict the injury. Accordingly, the purchaser's argument that the lender should not be allowed to disregard the recording statutes and what was revealed thereby is without merit.

While we recognize the purchaser's equitable rights in the property because of the purchase money he has expended, OCGA § 53-12-26 (1) (Code Ann. § 108-106); *Horner v. Savannah Valley Enterprises,* 234 Ga. 371, 375 (216 SE2d 113) (1975); *Shubert v. Speir,* 201 Ga. 20 (3) (38 SE2d 835) (1946), his rights are not entitled to priority over the lender's security deed under the facts of this case. Thus, in Case No. 39585 the trial court did not err in granting summary judgment to the lender and in denying summary judgment to the purchaser.

---

which are against the interests of third parties who have acquired a . . . lien binding the same property and who are acting in good faith and without notice shall take effect only from the time they are filed for record in the clerk's office." OCGA § 44-14-63 (Code Ann. § 67-1305) requires recordation of deeds to secure debt.

[2] The purchaser argues that the builder's possession of the property was not such possession as would impute constructive notice to the purchaser that the builder's title was subject to the lender's recorded security deed, in that a builder may have possession of land without owning it. However, in addition to the builder's possession of the lot, the purchaser contracted and dealt with the builder as its owner, which it was. The purchaser also argues that he did not contract with the builder for purchase of the lot (he contracted merely for construction of a house thereon), but the purchaser would seek to and we would enforce the contract against the builder as including the sale of the lot.

2. The materialmen appeal the grant of summary judgment against them and in favor of the lender. Like the purchaser, they argue that because the warranty deed to the builder from the realtor was unrecorded, under OCGA § 44-2-2 (b) (Code Ann. §§ 67-2501, 67-2503), quoted in footnote 1 above, they are not chargeable with constructive notice of the lender's recorded security deed until the chain of title was completed by recording the quitclaim deed on July 2, 1982.

The trial court held that the materialmen were nevertheless on constructive notice of the lender's recorded deed to secure debt because they were aware of the builder's exclusive possession of the property, and that, therefore, under OCGA § 44-5-169 (Code Ann. § 85-408), they were also on constructive notice of the lender's prior recorded deed to secure debt. We disagree.

OCGA § 44-5-169 (Code Ann. § 85-408) provides in pertinent part that "[p]ossession of land shall constitute notice of the rights or title of the occupant." To operate as notice, the possession must be unambiguous, not subject to being misconstrued or misunderstood. *McDonald v. Dabney,* 161 Ga. 711, 725 (132 SE 547) (1925). Although we have found no similar Georgia cases, it is clear that the builder's possession of the lot does not meet this test.

In the course of their business, materialmen like those involved in this suit deal with builders under a variety of circumstances. Sometimes, as is the case here, the builder owns the land and builds a house for sale, but not always. Often a builder constructs a house under a contract with the owner, which would have been consistent with the record title in this case had the realtor contracted with the builder for construction of the house. Thus, it cannot be said as a matter of law that the builder's possession of Lot 4 of Hidden Lakes Subdivison, which was not a development of the builder, constituted the unambiguous possession necessary to give notice of its ownership of that lot. *McDonald v. Dabney,* supra, 161 Ga. at 725.

The lender does not contend, as it did with respect to the purchaser, that the materialmen had actual notice of the builder's ownership of the lot. We therefore find that granting summary judgment to the lender against the materialmen upon the rationale utilized by the trial court was error.

As noted, the materialmen argue that, not being chargeable with constructive notice of the lender's security deed, they are entitled to priority under OCGA § 44-2-2 (b) (Code Ann. §§ 67-2501, 67-2503), supra. The lender argues that its security deed was recorded. We find that, because the lender's security deed was not in the chain of title, it is as if it were not recorded for purpose of giving constructive notice. See OCGA § 44-2-1 (Code Ann. § 29-401); *McCandless v. Yorkshire*

*Guarantee &c. Corp.,* 101 Ga. 180 (28 SE 663) (1897); Ivey v. Transouth Financial Corp., 566 F2d 1023, 1025-26 (5th Cir. 1978). Such finding is necessary to effectuate the intent of OCGA § 44-2-2 (b) (Code Ann. §§ 67-2501, 67-2503), supra, and OCGA § 44-14-63 (Code Ann. § 67-1305), as well as the overall purpose of the recording statutes. In *Gamble v. Pilcher,* 242 Ga. 556, 557-58 (250 SE2d 416) (1978), we said: "The holder of a security deed takes subject to any claim for materials supplied, of which he has notice, *before his security deed is recorded.* [Cits.] Where the holder of the security deed takes the security deed with notice of the claim of the lien, it is assumed that he takes the security deed with the knowledge that the materialman has the right to levy on the property in order to obtain payment for the materials supplied." (Emphasis supplied.)[3]

Thus, under these authorities, those materialmen of whom the lender had notice of their claims before recording the quitclaim deed perfecting the chain of title on July 2, 1982, have priority over the lender's claim.

The lender may nevertheless have other defenses against some of the materialmen, such as their alleged noncompliance with the requirements of *Moore-Handley, Inc. v. Banks,* 138 Ga. App. 821 (227 SE2d 427) (1976). However, we reject the lender's defense that the materialmen who filed their liens against the realtor failed to file against the "true owner" as required by OCGA § 44-14-361 (b) (Code Ann. § 67-2001), because it was the lender which withheld from recording the deed which would have revealed the identity of the true owner and thus it was the lender which misled the materialmen as to the ownership of the property. *Bryant v. Ellenburg,* 106 Ga. App. 510, 512 (127 SE2d 468) (1962).

Because the foregoing may render moot remaining arguments not reached by the trial court, we reverse the grant of summary judgment in favor of the lender against the materialmen in Case No. 39759 for the reasons stated above and remand the case to the trial court for further proceedings.

*Judgment in Case No. 39585, affirmed; judgment in Case No. 39759, reversed and case remanded. All the Justices concur, except Marshall, P. J., disqualified.*

DECIDED JULY 7, 1983 —
REHEARING DENIED JULY 22, 1983 IN CASE NO. 39759.

---

[3] There is no merit to the lender's argument that under OCGA § 44-2-1 (Code Ann. § 29-401) a deed to secure debt automatically has priority over all liens regardless of notice.

*Myers, Fennessy & Skipper, James M. Skipper, Jr.,* for appellant (case no. 39585).

*Randolph B. Jones, Jr., O. Wendell Horne III, Benjamin F. Easterlin IV, Charles O. Oxford,* for appellees.

*Charles O. Oxford, Randolph B. Jones, Jr., James M. Skipper, Jr.,* for appellants (case no. 39759).

*Ellis, Easterlin & Peagler, Benjamin F. Easterlin IV,* for appellees.