A06A0166, A06A0167. ROOFING SUPPLY OF ATLANTA, INC.
v. FORREST HOMES, INC.; and vice versa.
(632 SE2d 161)

SMITH, Presiding Judge.

These two cases involve the interpretation and application of OCGA § 44-14-361.5, which pertains to mechanics' and material-men's liens. Roofing Supply of Atlanta, Inc. (RSA) placed liens on property owned by Forrest Homes, Inc., a developer of subdivisions, when the roofing subcontractor to whom RSA had supplied materials failed to pay for them. Forrest requested that the liens be removed, and when RSA refused, Forrest filed its complaint. Forrest asserted claims to quiet title, for tortious interference with business relations, and for slander of title. It also sought attorney fees and punitive damages. RSA filed a motion to dismiss and for judgment on the pleadings, and Forrest filed a motion for partial summary judgment on its quiet title claim.

The trial court found that RSA had forfeited its rights to mate-rialmen's liens and granted Forrest's motion for partial summary judgment on the quiet title claim, ordering removal of the liens. The trial court also granted RSA's motion to dismiss Forrest's remaining claims. In the main appeal, RSA appeals from the trial court's grant of Forrest's motion for partial summary judgment finding RSA's liens invalid. In the cross-appeal, Forrest appeals from the trial court's dismissal of its remaining claims. Because we agree with the trial court that RSA's liens are invalid, we affirm the trial court's grant of partial summary judgment to Forrest in the main appeal. We also conclude that the trial court correctly found no cause of action other than one to quiet title arising from RSA's filing of the invalid liens, and we affirm the judgment in the cross-appeal dismissing the remainder of Forrest's claims.

OCGA § 44-14-361.5 (b) provides that within 15 days of the date a contractor physically begins work on a property, the owner, owner's agent, or contractor must file a "notice of commencement" in the superior court in the county where the project is located. The notice

must include certain information listed in subsection (b), and a copy must be posted on the job site and given to all subcontractors and materialmen. Subsection (a) of the statute places a corresponding duty on subcontractors and materialmen when a notice of commencement has been filed. To make good on a statutory lien arising under OCGA § 44-14-361 (a), a materialman not in "privity of contract with the contractor" who provides materials to the property must "within 30 days from the filing of the Notice of Commencement or 30 days following the first delivery of . . . materials to the property, whichever is later, give a written Notice to Contractor . . . to the owner or the agent of the owner and to the contractor." OCGA § 44-14-361.5 (a). The notice to contractor must include certain information set forth in subsection (c) of OCGA § 44-14-361.5. "Contractor" is defined in OCGA § 44-14-360 (1) as "a contractor having privity of contract with the owner of the real estate."

The record shows that Forrest filed notices of commencement listing itself as both owner and general contractor. Forrest contracted with two individuals, Byung J. Park and Chris Ingram, d/b/a GBS, to roof the homes it was building on the property. GBS, in turn, purchased roofing materials from RSA. When GBS failed to pay for those materials, RSA filed claims of lien against the subdivision properties.

Because RSA had not filed any notices to contractor, Forrest brought this declaratory judgment action against RSA seeking to declare RSA's liens invalid. RSA answered and counterclaimed, and the parties filed their cross-motions.

*Case No. A06A0166*

1. In the main appeal, RSA contends the trial court erred in granting summary judgment to Forrest on its claim to quiet title by declaring the liens invalid. The trial court found that nothing in the statute prohibits an owner from also being the general contractor on a project and observed that "[m]any developers wear both . . . hats." The trial court then reasoned that because Forrest, the owner, listed itself as "general contractor" in its notices of commencement, and because RSA was not in privity with Forrest, RSA was required to provide Forrest with a notice to contractor.

In three enumerations, RSA argues that this reasoning is faulty because "under the plain meaning of the statute, the contractor and owner cannot be the same entity, as an entity cannot be in privity with itself," and that Forrest's notice of commencement was therefore defective. RSA further argues that in this case the true "contractor" is GBS, with whom RSA was in privity, and it therefore was not required under the statute to file a notice to contractor.

We cannot agree with RSA that an owner may not also be a "contractor" within the meaning of the statute. It is obvious from the plain language of the statute that it provides both a means of protecting owners and general contractors from being unfairly surprised by unknown debts of subcontractors and a method of ensuring that remote subcontractors and materialmen receive compensation for their contributions to the project. Forrest complied with the requirements of the statute by filing and posting the required notice of commencement. RSA could have ensured that it received compensation for the materials it purchased by giving notice to Forrest that it was supplying the materials for Forrest's project. It did not do so, and it cannot escape the consequences of its failure.

We reject RSA's argument that this construction leads to an absurd result. To the contrary, it is not the trial court's interpretation of the statute that leads to an absurd result but the construction placed on the statute by RSA. If GBS were the "contractor" identified in the statute, the two-fold protective purpose of the statute would be nullified because Forrest would have no notice of the transaction between RSA and GBS that could give rise to a lien on its property. We decline to interpret the statute in this manner. It is well established that "we must construe a statute so as to avoid an absurd result. [Cit.]" *Groover v. Johnston*, 277 Ga. App. 12, 14 (1) (a) (625 SE2d 406) (2005).

> The legislature has mandated strict compliance with these statutory provisions. OCGA § 44-14-361.1 expressly provides that liens "shall not be effective or enforceable" unless created or declared according to the statute. In addition, [the Georgia Supreme] Court has followed the rule that lien statutes in derogation of the common law must be strictly construed in favor of the property owner and against the materialman. The rationale is that there is usually no contract between the owner and supplier. Instead, a materialman's lien effectively permits the transfer of liability from the person who actually contracted with the materialman for materials to be used in improving real estate to the owner of the improved property.

(Citations, punctuation and footnotes omitted.) *Few v. Capitol Materials*, 274 Ga. 784, 785 (559 SE2d 429) (2002).

The case relied upon by RSA, *Aetna Cas. & Surety Co. v. Buck*, 594 S2d 280 (Fla. 1992), in addition to having no precedential value in this state, is distinguished on its facts. In *Buck*, the sole shareholder of the general contractor was also a partner in the joint venture that owned the property. A materialman notified the general

contractor that it supplied materials for the project but did not notify the owner as required by applicable Florida law. The Supreme Court of Florida held that the owner and the contractor shared an identity of interest, making notice to the contractor sufficient under the statute. Id. at 282.

We need not decide whether the Florida result might be persuasive here in the absence of Georgia precedent because the facts in *Buck* are easily distinguished from those in this case. Here the materialman, RSA, notified Forrest *neither* in its capacity as owner *nor* in its capacity as general contractor, thereby failing to comply with the statute. Because notice is at the heart of the statute, *Buck* is not persuasive here. The trial court did not err in finding that Forrest was entitled to summary judgment on its claim to quiet title because RSA's liens were invalid.

## Case No. A06A0167

2. In the cross-appeal, Forrest contends that the trial court erred in granting RSA's motion to dismiss Forrest's causes of action for tortious interference with business relations and slander of title as well as its claims for punitive damages and attorney fees. These claims were premised upon RSA's refusal to release its liens after Forrest gave it written notice that the liens were invalid.

Forrest maintains that the trial court erred in dismissing its claim for tortious interference with business relations.

> To recover under a theory of tortious interference with business relations, a plaintiff must show defendant: (1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused plaintiff financial injury.

(Citation omitted.) *Renden, Inc. v. Liberty Real Estate Ltd. Partnership*, 213 Ga. App. 333, 334 (2) (444 SE2d 814) (1994). Forrest argues that it properly alleged all required elements of the cause of action by showing that RSA filed liens that were invalid. But this court has held that "[i]n Georgia, there is no tort for the wrongful filing of a claim of materialman's or mechanic's lien. Where a materialman's or mechanic's lien is improperly filed, the cause of action, if any, is for defamation concerning land under OCGA § 51-9-11." *Amador v. Thomas*, 259 Ga. App. 835, 837 (2) (578 SE2d 537) (2003). Forrest asserts disingenuously that it is not seeking recovery for RSA's wrongful filing of the lien, but for RSA's interference with possible

prospective purchasers of the property through its wrongfully and maliciously filed liens. We fail to discern any difference between the tort prohibited by our holding in *Amador* and the one asserted by Forrest. In both, the basis for the theory of recovery asserted is an improperly filed lien; no other action on RSA's part is alleged. And under Georgia law filing a lien, no matter the possible consequences of that filing, will not give rise to a cause of action for tortious interference with business relations. Id. The trial court did not err in dismissing this claim.

3. Forrest next asserts that the trial court erred in dismissing its claim for slander or defamation of title. This cause of action requires:

> (1) publication of slanderous or libelous words; (2) with malice; (3) causing special damages; and (4) regarding property in which the plaintiff has an ownership interest. OCGA § 51-9-11. A false lien may support a cause of action for defamation of title under OCGA § 51-9-11, but the statements in the lien must be false and the claimant must be aware of their falsity.

(Citations and footnotes omitted.) *Simmons v. Futral*, 262 Ga. App. 838, 842 (586 SE2d 732) (2003). The plaintiff has the burden of proving falsity. Id. While RSA's liens were improperly filed, Forrest failed to carry its burden of showing that the statements in the lien notices were false. *Premier Cabinets v. Bulat*, 261 Ga. App. 578, 584 (6) (583 SE2d 235) (2003). Moreover, allegations made within "regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged." OCGA § 51-5-8. The trial court could have found in this case that dismissal of this claim was warranted on the ground that RSA's filing of the lien notice was privileged under OCGA § 51-5-8. *Bulat*, supra at 584 (6). The trial court did not err in dismissing that claim.

4. Because Forrest's claims for punitive damages and attorney fees would have been awardable only if Forrest had prevailed on its tort claims, they were properly dismissed as well. See generally *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 801 (522 SE2d 739) (1999) (punitive damages awardable only when compensatory damages awarded); *Lines v. City of Bainbridge*, 273 Ga. App. 420, 422 (2) (615 SE2d 235) (2005) (no evidence that defendant engaged in any activity authorizing attorney fees).

*Judgments affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED MAY 23, 2006.

*Hays & Potter, Bernard E. Potter*, for appellant.
*Stites & Harbison, Robert D. Douglass*, for appellee.