A10A1787. SHIVA MANAGEMENT, LLC et al. v. WALKER et al.
(708 SE2d 710)

DILLARD, Judge.

Shiva Management, LLC ("Shiva"), and the estate of its sole member and owner, William Gottlieb (collectively "Shiva/Gottlieb"), appeal a grant of summary judgment in favor of Joe Walker and Linda Jackson (collectively "Walker/Jackson") on their claim against them for slander of title. Shiva/Gottlieb contend that the trial court erred in (1) precluding jury consideration of whether a lien filed against the subject property was slanderous or libelous, (2) precluding jury consideration of whether Shiva/Gottlieb acted with malice, and (3) considering the motion for summary judgment after it was untimely filed. Because we conclude that there are genuine issues of material fact precluding summary adjudication, we reverse and remand this case with direction.

Viewing the facts in the light most favorable to the nonmovants (Shiva/Gottlieb), as we are required to do in a summary-judgment action,[1] the record shows that Gottlieb first met Walker at a makeshift flea market in DeKalb County, which Walker operated on property owned by Jackson. Gottlieb was an occasional customer, and he repeatedly expressed to Walker an interest in purchasing the subject property. Walker initially advised Gottlieb that he was not

---

[1] *See, e.g., Furlong v. Dyal*, 246 Ga. App. 122, 123 (1) (539 SE2d 836) (2000).

interested in selling the property (that unbeknownst to Gottlieb he did not own), but eventually "agreed" to enter into a contract for the sale of the property in exchange for a loan of $7,000 through Gottlieb's real estate investment firm, Shiva. This loan was memorialized in a promissory note and deed to secure debt, both of which were signed by Jackson (who was acting as a pass through for Walker). The deed to secure debt gave Shiva a second position security interest in the property, and the loan was to be repaid with interest on or before June 23, 2004. In connection with the loan transaction, Jackson and Walker *both* signed a sales contract with Gottlieb, agreeing to sell the property for $170,000 on or before June 23, 2004.[2] In signing the sales contract, Gottlieb made no explicit reference to Shiva.

The sales contract provided that "time is of the essence" and gave Gottlieb the right to specific performance. Additionally, at the same time the sales contract was executed, Gottlieb signed an affidavit of filing and recorded this document along *with* the sales contract as an attachment. In this affidavit, Gottlieb averred that the "undersigned [Shiva] has vested interests[,] including specific performance of the contract." Gottlieb claims that he intended to sign the sales contract in his corporate capacity and that his failure to do so was inadvertent, and he further argues that the affidavit of filing effectively assigned any "vested interest" he had in the sales contract to Shiva pursuant to the assignment clause contained in that contract. Thereafter, from February to June 2004, Shiva/Gottlieb assert that they contacted Walker on numerous occasions in an effort to set a closing date for the subject property, advising that they were fully prepared to pay the entire purchase price in cash.[3] Notwithstanding these efforts, as of June 23, 2004, the loan had not been repaid and the sale of the property had not closed.

The situation became even murkier in August 2004 (a little over a month after the expiration of the sales contract), when Jackson purportedly quitclaimed to Walker a 50 percent interest in the subject property. Then, in September 2004, Shiva recorded an "Affidavit-Notice of Contract/Claim of Beneficial Interest Lien" in the DeKalb County real-estate records, claiming a lien on the subject property by virtue of the unsatisfied sales contract and the specific-performance provision contained therein.

---

[2] Walker signed the sales contract even though he had no ownership interest in the subject property at that time.

[3] Gottlieb produced a letter—purportedly written to Walker prior to the expiration of the contract—in which he stated, "I am waiting on you to close on the house, which I would like to do in the next ten days. I realize you are having some second thoughts, but we do have a contract. Please give me a call to set up a time with the attorney . . . ."

In April 2006, Jackson authorized Walker, through a general power of attorney, to handle certain aspects of her financial affairs (including real-estate transactions). Almost a year later, in March 2007, Walker filed suit against both Shiva/Gottlieb for fraud and slander of title, alleging that Shiva's lien against the property was (1) false, (2) clouded his title, and (3) prevented him from taking out additional loans on the subject property. Shiva/Gottlieb answered and filed counterclaims for conspiracy, fraud, breach of contract, and specific performance, and sought to add Jackson as a party. In October 2009, Walker/Jackson moved for summary judgment on their slander-of-title claim, which the trial court granted. This appeal follows.

At the outset, we note that when a party moves for summary judgment, this "does not authorize the trial court to sit as both judge and jury, weighing the evidence and deciding issues that are traditionally for the jury."[4] Instead, "[t]he sole function of the court on a motion for summary judgment is . . . to determine whether there exists a genuine issue of material fact."[5] And here, having viewed the facts in the light most favorable to Shiva/Gottlieb,[6] we find for the reasons noted infra that genuine issues of material fact precluded the trial court's grant of summary adjudication.

1. First, there is a genuine issue of material fact as to whether Shiva was a party to the sales contract. As noted supra, at the time the sales contract was executed contemporaneously with the promissory note and deed to secure debt (both of which identified Shiva as the party to those agreements), Gottlieb executed an affidavit of filing claiming specifically that Shiva (not Gottlieb) had a vested interest in the subject property pursuant to the sales contract, and this affidavit was then recorded along *with* the contract as an attachment. These contemporaneous filings, considered together, create an ambiguity as to whether Gottlieb signed the sales contract in his personal or corporate capacity.[7] Moreover, even if there were no

---

[4] *Re/Max Specialists, Inc. v. Kosakai*, 202 Ga. App. 871, 872 (415 SE2d 698) (1992) (citation and punctuation omitted).

[5] *Id.* at 872 (citation and punctuation omitted).

[6] *See, e.g., Furlong*, 246 Ga. App. at 123 (1).

[7] *See* OCGA § 24-6-3 (a) ("All contemporaneous writings shall be admissible to explain each other."); OCGA § 24-6-3 (b) ("Parol evidence shall be admissible to explain all ambiguities, both latent and patent."); *see also Baker v. Jellibeans, Inc.*, 252 Ga. 458, 459 (1) (314 SE2d 874) (1984) ("Parol evidence shall be admissible to explain all ambiguities, both latent and patent. This is so despite an 'entire agreement' clause in the contract." (citation and punctuation omitted)); *Newbern v. Chapman Funeral Chapel*, 158 Ga. App. 790, 790 (282 SE2d 379) (1981) (reversing grant of summary judgment, in part, where defendant "denied that his signature was in any capacity other than as a representative of his wife"). *Compare Bennett v. Clark*, 192 Ga. App. 698, 699 (385 SE2d 780) (1989) ("There being no independent evidence in the record to refute these averments and to support the appellant's position that [another

evidence that Shiva was a party to the sales contract, this would merely mean that Gottlieb himself had a vested interest in the contract, as noted infra.

2. Having concluded that a genuine issue of material fact remains as to whether Shiva or Gottlieb was the optionee to the sales contract, we will now consider whether the trial court erred in concluding that Shiva/Gottlieb did not have a vested interest[8] in the property because of a failure to exercise the option contained in the sales contract to purchase the subject property.[9] Specifically, the trial court found that Shiva/Gottlieb failed to exercise this option because they never (1) "obtained or applied for financing to purchase the subject property," (2) "set up a closing with a closing attorney," or (3) "contacted Linda Jackson, the owner of the subject property, to close the subject property." We will address each of these findings in turn.

The relevance of Shiva/Gottlieb failing to obtain or apply for financing is difficult to discern at the summary-judgment stage of these proceedings,[10] given Gottlieb's claim that he told Walker he was fully prepared to tender the entire purchase price for the subject property *in cash* at closing.[11] And indeed, Walker admitted that he understood Gottlieb to be a man of significant wealth. Until this disputed fact is resolved, any consideration of Shiva/Gottlieb's alleged failure to obtain or apply for financing is premature.[12]

---

individual] was acting as his fiduciary in dealing with the sellers, we conclude that the trial court was also correct in entering summary judgment against the appellant with respect to his claim against these appellees.").

[8] *See A.S. Reeves & Co. v. McMickle*, 270 Ga. App. 132, 133 (605 SE2d 857) (2004) (noting that option contracts become contracts upon acceptance); *see also Martin v. Schindley*, 264 Ga. 142, 143 (442 SE2d 239) (1994); *Varn Turpentine & Cattle Co. v. Allen & Newton*, 38 Ga. App. 408, 408 (3) (144 SE 47) (1928).

[9] For a purchaser to have entitlement to seek specific performance of a contract, he "must make an unconditional tender of the purchase money due." *Fox Run Props., LLC v. Murray*, 288 Ga. App. 568, 573 (2) (b) (654 SE2d 676) (2007) (citation omitted). However, such tender is "excused or waived where the seller, by *conduct or declaration*, proclaims that if a tender should be made, acceptance would be refused." *Id.* (emphasis supplied) (citation and punctuation omitted). This is because "[t]he law does not require a futile tender or other useless act." *Id.* (punctuation omitted).

[10] The sales contract provided that the buyer was to apply for a loan within fourteen (14) days of the binding agreement date. Gottlieb admitted that the contract contained such a provision, but he asserted that the provision requiring him to acquire funding prior to the closing applied only if that funding was needed.

[11] *Compare Covington v. Countryside Investment Co.*, 263 Ga. 125, 126 (1) (428 SE2d 562) (1993) ("'[Appellants] introduce[ ] no evidence that they had ever notified appellee that they wished to waive the financing contingency and that they were ready, willing, and able to pay for the property without financing. Most significantly, there was no evidence that appellants had at any time made an unconditional tender of the purchase price provided in the contract.").

[12] *Cf. Barkley-Cupit Enters., Inc. v. Equitable Life Assur. Soc. of U.S.*, 157 Ga. App. 138, 142 (2) (276 SE2d 650) (1981) (holding that issue of fact remained as to whether seller waived

Likewise confusing is the trial court's finding that Shiva/Gottlieb failed to exercise its option to purchase the subject property because they "failed to set up a closing with a closing attorney." As noted supra, Gottlieb claimed that he attempted to set up a closing date with Walker on several occasions, offered to tender the full purchase price in cash at closing, and was precluded from scheduling a closing because Walker flatly refused to comply with and honor the sales contract.[13] If Shiva/Gottlieb can establish that they failed to schedule a closing on the subject property because Walker refused to sell (or to allow Jackson to sell) the property, then Walker/Jackson cannot rely upon or benefit from such a failure as a means of establishing that Shiva/Gottlieb failed to exercise the option to purchase the property.[14]

Finally, while it is undisputed that Shiva/Gottlieb had no communications with Jackson—the only owner of the subject property during the time period outlined in the sales contract—about exercising the option to purchase the subject property,[15] this fact, in and of itself, cannot serve as a basis for summary adjudication given the current state of the evidentiary record. Indeed, there is a significant amount of evidence that both Walker and Jackson represented to Shiva/Gottlieb—explicitly and/or through their conduct—that Walker was either an owner in the subject property, a person with a vested (but perhaps unperfected) interest in the property,[16] or, at the very least, a person with the apparent authority to act as the equivalent of Jackson's agent/broker with respect to the property.[17]

---

necessity of buyer's timely performance).

[13] In addition to his testimony, Gottlieb produced a diary of sorts (that purportedly contains notations of his oral communications with Walker), which indicates that Walker first told Gottlieb that he was simply not prepared to close, and that Walker eventually flat out *refused* to sell the subject property.

[14] *See* OCGA § 13-4-23 ("If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance."); *see also Simprop Acquisition Co. v. L. Simpson Charitable Remainder Unitrust*, 305 Ga. App. 564, 567 (1) (b) (699 SE2d 860) (2010) (noting that OCGA § 13-4-23 applies to option contracts).

[15] Gottlieb claimed that he never communicated with Jackson about setting up a closing because, in his words, he viewed Jackson as "an ancillary figure." More precisely, Gottlieb did not contact Jackson because he had exclusively discussed the land-sale deal with Walker and thought Walker had authority to act with respect to the subject property.

[16] There is evidence in the record that might shed light on Gottlieb's confusion as to the identity of the property owner. Walker and Jackson actually lived together at the residence located on the subject property for approximately a year, and Jackson testified that she considered her relationship with Walker to be a "common law" marriage. Moreover, Walker and Jackson *both* testified that, because Walker had a sub-par credit rating, he transferred title to the subject property to Jackson in order to borrow against the property.

[17] Indeed, Jackson, who was apparently the 100 percent owner of the subject property, signed a sales contract regarding *her* property that *explicitly* represented Walker as having some degree of interest in that property. As Shiva/Gottlieb aptly notes on appeal, "Yes, Walker

Moreover, it is undisputed that Jackson's interest in the subject property was only revealed to Shiva/Gottlieb when Gottlieb's attorney conducted a title search and informed Gottlieb that Jackson was in the chain of title, and yet both Walker and Jackson signed a contract that explicitly stated that they both held an interest in the property.[18] In any event, for purposes of our review, we need not conclusively decide whether Walker had any actual interest in or authority with respect to the subject property during the sales-contract period. All we conclude today is that there are genuine issues of material fact as to whether Shiva/Gottlieb were justified in their belief that Walker had at least apparent authority to deal on Jackson's behalf while Shiva/Gottlieb were attempting to exercise the option to purchase the subject property.[19] And the resolution of this disputed fact is necessary prior to considering whether Shiva/Gottlieb are entitled to rely upon the futile-tender rule.[20]

3. Having concluded that there are genuine issues of material fact as to whether Shiva has a vested interest in the sales contract (or, alternatively, that Gottlieb possessed such an interest) *and* whether Shiva/Gottlieb lawfully exercised the option provided by that contract to purchase the subject property, we need not address the trial court's remaining findings of fact because the contested

---

signed an agreement to sell property he did not own at that time."

[18] Gottlieb testified that in March 2003, months before the sales contract was signed, he discussed the provisions of the agreement with Walker exclusively and Walker never mentioned Jackson's ownership of the property. And Walker even admitted that he never told Gottlieb he was not the owner of the property. Gottlieb further testified that despite Jackson's status as the sole signatory on the promissory note and deed to secure debt, he personally did not realize (until litigation) that Jackson owned a 100 percent interest in the property. While this assertion may, as the trial court implied in its order, strain credulity, Gottlieb's true knowledge of the extent of Jackson's ownership in the subject property is of no consequence if he or Shiva had reason to believe that Jackson vested Walker with the authority to act on her behalf.

[19] The trial court's order did not address whether Walker had the authority or apparent authority to act on Jackson's behalf with respect to the subject property. Read literally, the trial court's order seems to be suggesting that one who holds an option to purchase land must always deal directly with the owner(s) of the property at issue and may not rely upon any representation made by an agent of the seller, or a person with the apparent authority to represent the seller, with respect to that property. This is not the law in Georgia. *See Turnipseed v. Jaje*, 267 Ga. 320, 323-24 (2) (a) (477 SE2d 101) (1996) (explaining that a person is entitled to reasonably rely on one who has the apparent authority to act on behalf of another); *see also Commercial Credit Corp. v. Noles*, 85 Ga. App. 392, 396-97 (69 SE2d 309) (1952) ("[T]he principal may not assert that his agent has authority less extensive than that apparent authority which is reasonably deducible from the conduct of the parties." (citations omitted)). *Cf. Dealers' Discount Corp. v. Trammell*, 98 Ga. App. 748, 751 (106 SE2d 850) (1958) (holding that the plaintiff must suffer the loss when he or she clothes another with apparent authority and thereby enables that person to perpetrate a wrongful act).

[20] *See Fox Run Props.*, 288 Ga. App. at 573 (2) (b) (noting that actual tender is "excused or waived where the seller, by *conduct or declaration*, proclaims that if a tender should be made, acceptance would be refused." (citation and punctuation omitted)); *Kennedy v. Droughton Trust*, 277 Ga. App. 837, 841 (2) (627 SE2d 887) (2006) (same).

issues addressed herein must be resolved prior to any consideration of the plaintiffs' slander-of-title claim.

In sum, if either Shiva *or* Gottlieb lawfully exercised the option to purchase the subject property (thereby transforming the contract into one for the *sale* of land *and* thus passing equitable title to Shiva/Gottlieb[21]), and Walker/Jackson flatly refused to sell the property as required by the sales contract, then there remains a question as to whether Walker/Jackson even have standing to maintain their slander-of-title action.[22] While we do not hold such at this time, it is difficult to conceptualize a legal basis for a breaching seller of land to maintain a slander-of-title action against a non-breaching buyer for filing a lien of beneficial interest on a piece of property to which he already holds equitable title.

Additionally, even if on remand the trial court concludes that neither Shiva nor Gottlieb held equitable title to the subject property at the time the lien was filed and, thus, that the lien was false, it must still consider whether Shiva/Gottlieb genuinely *believed* they held such title in considering the merits of Walker/Jackson's slander-of-title claim.[23] If the trier of fact resolves this question in favor of

---

[21] *See A.S. Reeves & Co.*, 270 Ga. App. at 133 (noting that option contracts become contracts upon acceptance); *see also Buck v. Duvall*, 9 Ga. App. 656, 656 (72 SE 44) (1911) ("The execution and delivery of the bond for title creates a special form of trust estate. The equitable title, charged with the payment of the purchase money, passes to the vendee, and the vendor holds the legal title charged with the use that, while it may be asserted to secure the payment of the purchase money in full, nevertheless, as soon as the purchase money is paid, it (legal title) is to pass to the vendee, his heirs or assigns." (citation and punctuation omitted)). *Cf. Martin*, 264 Ga. at 143; *Varn Turpentine & Cattle Co.*, 38 Ga. App. at 408 (3).

[22] *See Horner v. Savannah Val. Enters., Inc.*, 234 Ga. 371, 375 (216 SE2d 113) (1975) ("[T]he law recognizes that title is held in trust for the purchaser."); *see also Midwest Glass Co. v. Standford Dev. Co.*, 339 NE2d 274, 278 (Ill. App. 1975) ("[I]f a party has reasonable grounds to believe that he had legal or equitable title or even a claim, then assertion of this claim does not amount to slander of title." (citation omitted)).

[23] *See Roofing Supply of Atlanta, Inc. v. Forrest Homes, Inc.*, 279 Ga. App. 504, 508 (3) (632 SE2d 161) (2006) (in a slander-of-title action, statements in a lien must be false *and* the publishing party must *know* that the statements are false); *Simmons v. Futral*, 262 Ga. App. 838, 848 (586 SE2d 732) (2003) (same); *see also* OCGA § 51-5-7 (3) ("Statements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned [are deemed privileged]."); *Sassafras Mountain Estates Prop. Owners Ass'n, Inc. v. Gould*, 302 Ga. App. 690, 692 (3) (691 SE2d 600) (2010) (holding that there were issues of fact as to whether a lien at issue in a slander-of-title action was filed in good faith); *Harmon v. Cunard*, 190 Ga. App. 19, 20 (378 SE2d 351) (1989) (holding that testimony supported appellee's claim of good faith in filing lien). *Compare Lee v. Washington Square Homeowners' Ass'n, Inc.*, 273 Ga. App. 392, 396 (2) (615 SE2d 210) (2005) (affirming grant of summary judgment in favor of defendant on plaintiff's slander-of-title claim when plaintiff failed to show the requisite malice) *with Compris Techs., Inc. v. Techwerks, Inc.*, 274 Ga. App. 673, 681 (4) (618 SE2d 664) (2005) (holding that plaintiff presented jury with sufficient evidence from which it could infer malice); *Lincoln Log Homes Mktg., Inc. v. Holbrook*, 163 Ga. App. 592, 594 (2) (295 SE2d 567) (1982) (holding that jury was authorized to determine from the evidence that publisher of statement knew its claim of lien was false). In this regard, we note that the trial court relied on an improper standard in determining as a matter of law that

Shiva/Gottlieb, then Walker/Jackson's slander-of-title claim fails.[24]

Given the foregoing, we conclude that the genuine issues of material fact noted supra precluded the trial court's grant of summary judgment in favor of Walker/Jackson. As such, we reverse the trial court's order and remand the case for further proceedings consistent with this opinion.

*Judgment reversed and case remanded with direction. Barnes, P. J., and Blackwell, J., concur in judgment only.*

DECIDED MARCH 29, 2011.

*Richard S. Alembik, Willis L. Miller IV,* for appellants.
*Ayoub & Mansour, John A. B. Ayoub, John G. Mansour,* for appellees.

Shiva/Gottlieb maliciously filed the lien, and on remand, the cases supra provide the appropriate standard.

[24] To prevail on a claim of slander of title, a plaintiff must show (1) the publication of slanderous words; (2) that the words were false; (3) that the words were malicious; (4) that the publication resulted in special damages; and (5) that the words regarded property in which the plaintiff has an ownership interest. *See Latson v. Boaz,* 278 Ga. 113, 114 (598 SE2d 485) (2004); *Shoen v. Md. Cas. Co.,* 147 Ga. 151, 153 (93 SE 82) (1917); *Roofing Supply of Atlanta, Inc.,* 279 Ga. App. at 508 (3); *Simmons,* 262 Ga. App. at 848; *Daniels v. Johnson,* 191 Ga. App. 70, 73 (2) (381 SE2d 87) (1989); *Harmon,* 190 Ga. App. at 19; *see also* OCGA § 51-9-11.