**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 24, 2014**

# In the Court of Appeals of Georgia

A13A2104. SINGH v. STERLING UNITED, INC.
A14A0441. SINGH v. STERLING UNITED, INC.

MCMILLIAN, Judge.

Inderjit Singh owns a tract of commercial property in Forsyth County. Singh leased a portion of that property to Sterling United, Inc., which operated a gas station and convenience store thereon. After Singh filed a dispossessory action in magistrate court, Sterling United counterclaimed for breach of contract and for specific performance of a purchase option, which Singh had granted to Sterling United under the lease. The magistrate court transferred the case to superior court, where Singh dismissed the dispossessory claim and asserted a breach of contract claim and sought a declaratory judgment against Sterling United.

Following a trial, the jury rendered a verdict for Sterling United on Singh's breach of contract claim and awarded Sterling United $1 in nominal damages and $266,218.09 in attorney fees and costs on its breach of contract claim. The jury also answered an interrogatory in connection with Sterling United's specific performance claim. The trial court, which had reserved ruling thereon, then ordered that the Purchase Option be enforced. The trial court later found Singh in contempt of court for failing to comply with its order that Singh provide certain information to Sterling United.

In Case No. A13A2104, Singh contends, among other things, that the trial court erred in concluding that the lease was clear and certain enough to permit an award of specific performance and in entering a judgment for attorney fees which included Sterling United's costs in defending Singh's action. For the reasons set forth below, we agree. In Case No. A14A0441, Singh contends that the trial court erred in finding him in contempt of court, denying his cross-motion to find Sterling United in contempt of court, and in clarifying the terms of the lease. We find that the trial court did not err in finding Singh to be in contempt, but that Singh's other claims are moot.

2

After a verdict is rendered, "all the evidence and every presumption and inference arising therefrom, must be construed most favorably towards upholding the verdict." (Citation and punctuation omitted.) *Esprit Log & Timber Frame Homes, Inc. v. Wilcox*, 302 Ga. App. 550, 550 (691 SE2d 344) (2010). So viewed, the evidence shows that Singh owns commercial property in Forsyth County. In 2004, Singh leased a portion of the property, consisting of a convenience store and gas station, to Sterling United for a ten-year term (the "Lease"). The Lease required, among other things, that Sterling United pay $8,000 a month in rent, and, contemporaneously with the execution of the Lease, purchase "the goodwill located at the Premises" for $350,000.

The Lease also granted Sterling United an option to purchase certain real property associated with the Lease (the "Purchase Option").[1] The Purchase Option was prefaced with the condition "provided tenant is not in default," and the option price was the fair market value of the "Property" as determined by an appraiser chosen by Singh. Upon closing of the Purchase Option, the parties agreed that the $350,000 Sterling United paid for the goodwill would be credited against the option price.

---

[1] The Lease also included a separate right of first refusal.

On March 14, 2011, Sterling United provided Singh with written notice that it was invoking its rights under the Purchase Option and that it intended to proceed with the closing. Consistent with the Purchase Option, Sterling United asked Singh to designate an appraiser to determine the fair market value of the property. After Sterling United sent a second letter to the same effect, Singh responded that Sterling United could not exercise the option because it was in default under the Lease.

On June 10, 2011, Singh filed a dispossessory action in magistrate court claiming that Sterling United was in breach of material terms of the Lease. In its answer, Sterling United denied Singh's claims and counterclaimed for specific performance of the Purchase Option as well as two counts of breach of contract. The magistrate court determined that it lacked jurisdiction over the case and transferred the matter to the superior court. Singh then filed an amended complaint setting forth claims for breach of contract and declaratory judgment, and he voluntarily dismissed his dispossessory claim. The case proceeded to trial.

In response to an interrogatory, the jury found that, as of March 14, 2011, Sterling United was not in default in performing any of the terms and provisions of the Lease. In its verdict, the jury found in favor of Sterling United as to Singh's breach of contract claim. The jury also found in favor of Sterling United on its

4

counterclaim for breach of contract and awarded $1 as nominal damages and $266,218.09 in attorney fees and costs of litigation. The trial court incorporated the jury's verdict into its judgment and then, based on the jury's finding that Sterling United had not been in default, ordered Singh to sell the property to Sterling United pursuant to the Purchase Option.

On appeal, Singh claims that the trial court erred (i) in finding that the Lease was certain enough to be enforced by specific performance, (ii) in entering a judgment including both a decree of specific performance and nominal damages for breach of contract, (iii) in awarding attorney fees, (iv) in ruling that evidence of Sterling United's breach of the Lease after it exercised the Purchase Option was irrelevant, and (v) in requiring Singh to fully credit Sterling United, at closing, with rent paid from July 2011, until the date of trial.

1. As a threshold issue, Sterling United argues that this Court lacks jurisdiction over Singh's appeal because the notice of appeal was not filed within seven days of the entry of the trial court's judgment. OCGA § 44-7-56 is part of Article 3, Chapter 7 of Title 44, which governs dispossessory proceedings, and requires that as to "any judgment," an "appeal shall be filed within seven days of the date such judgment was entered." Here, Singh's notice of appeal was filed 21 days after entry of the judgment.

5

See, e.g., *Register v. Elliott*, 285 Ga. App. 741, 743 (647 SE2d 406) (2007) (noting that "[t]he proper and timely filing of a notice of appeal is an absolute requirement to confer jurisdiction upon an appellate court." (citation and punctuation omitted)).

In determining the proper procedure to follow on appeal, "the underlying subject matter generally controls over the relief sought." (Citation and punctuation omitted.) *Ray M. Wright, Inc. v. Jones*, 239 Ga. App. 521, 522 (521 SE2d 456) (1999). Thus, where "the action began and continued as a dispossessory action," an appeal from any judgment in the action is required to be filed within seven days. *Radio Sandy Springs, Inc. v. Allen Rd. Joint Venture*, 311 Ga. App. 334, 335 (715 SE2d 752) (2011) (although the issue of possession had been resolved, the notice of appeal from the trial court's order awarding past due rent was required to be filed within seven days because the case retained its character as a dispossessory action); *Ray M. Wright, Inc*, 239 Ga. App. at 523 (appeal from order confirming arbitration award in dispossessory proceeding was required to be filed within seven days).

Nevertheless, a case which is initially filed as a dispossessory action will not always continue as a dispossessory action. For example, in *America Net, Inc. v. United States Cover*, 243 Ga. App. 204 (532 SE2d 756) (2000), we recognized that although an action was filed in the magistrate court as a dispossessory action, it was

6

"possible for the parties to stipulate to the transfer of the contractual dispute to the state court, leaving the summary provisions of the dispossessory statutes behind." Id. at 207.

In this case, after the magistrate court transferred the case to the superior court, Singh filed an amended complaint for breach of contract and declaratory judgment and *dismissed* his dispossessory claim. Thereafter, the litigation proceeded without reliance on the provisions of the dispossessory statute,[2] and Sterling United remained in possession of the property. Compare *Ray M. Wright, Inc.*, 239 Ga. App. at 523 (finding that "not only did this action begin as a dispossessory proceeding instituted by Wright, but Wright continued to rely upon the provisions of the dispossessory statutes throughout the litigation"). Moreover, as in *America Net*, the underlying subject matter was no longer a dispute over immediate possession of the premises, once Singh dismissed the dispossessory claim. *America Net*, 243 Ga. App. at 207.

---

[2] For example, OCGA § 44-7-54 (a) requires that "[i]n any case where the issue of the right of possession cannot be finally determined within two weeks from the date of service of the copy of the summons and the copy of the affidavit, the tenant shall be required to pay into the registry of the trial court: (1) All rent and utility payments which are the responsibility of the tenant payable to the landlord . . . ." Following dismissal of the dispossessory claim, the trial court denied Sterling United's motion to pay its rent into the registry of the court.

7

Accordingly, we conclude that this case did not retain its character as a dispossessory proceeding,[3] and Singh was not required to file his notice of appeal within seven days of the judgment. See id. at 205 (finding limitations of OCGA § 44-7-56 did not apply, "particularly in view of our strong public policy to avoid the dismissal of an appeal and to reach the merits of a case whenever it is reasonable to do so").

2. Turning to the merits of the appeal, Singh contends that the trial court erred in ruling that the Lease's Purchase Option was clear and certain enough to be enforced by specific performance. We agree.

In a pre-trial motion and later in his motion for directed verdict, Singh contended that Sterling United could not prevail on its counterclaim for specific

---

[3] In *America Net*, we also indicated that "the procedure employed by the parties here is the only certain method by which parties may convert litigation on a dispossessory warrant to a conventional contract action under a lease, once possession of the premises is established," and that it would otherwise retain its character as a dispossessory action. 243 Ga. App. at 207. That limitation does not apply here inasmuch as the right to possession of the premises for purposes of a dispossessory proceeding was never established, either through an order or by voluntary surrender of the premises. Thus, we are not faced with the situation of a concluded dispossessory action that could bar an attempt to litigate contract claims separately in a court of record. Cf. id.

performance of the Lease's Purchase Option because that contract did not specify the land to be sold with sufficient definiteness. The trial court denied the motions. "The adequacy of a property description is a legal question for the court." *Makowski v. Waldrop*, 262 Ga. App. 130, 132 (1) (584 SE2d 714) (2003).

"A contract upon which specific performance is sought must be certain, definite, and clear, and so precise in its terms that neither party can reasonably misunderstand it." *Smith v. Wilkinson,* 208 Ga. 489, 493 (2) (67 SE2d 698) (1951). If the land is not clearly identified, specific performance of a contract for the sale of land should not be granted. *Plantation Land Co. v. Bradshaw*, 232 Ga. 435, 440 (IV) (207 SE2d 49) (1974). The land to be sold must be identified by the contract "with reasonable definiteness by describing the particular tract or furnishing a key by which it may be located with the aid of extrinsic evidence." (Citation and punctuation omitted.) *Scheinfeld v. Murray*, 267 Ga. 622, 623 (1) (481 SE2d 194) (1997).

Further, "[b]ecause a decree for specific performance operates as a deed, the description in the decree should be as definite as that required for a deed." (Citation omitted.) *T & G Enterprises v. White*, 298 Ga. App. 355, 358 (1) (680 SE2d 196) (2009). The description of property contained in a deed is sufficient if "it discloses with sufficient certainty what the intention of the grantor was with respect to the

quantity and location of the land therein referred to, so that its identification is practicable." (Citation and punctuation omitted.) *Hanners v. Woodruff*, 257 Ga. 73, 74 (354 SE2d 826) (1987).

Here, the Lease provides that Sterling United "shall have the option to buy the Real Property within the first 10 years of the term in accordance with the provisions of Exhibit 'B' attached hereto and incorporated herein by reference." Exhibit "B," entitled "Purchase Option," provides, in relevant part:

> PROVIDED [STERLING UNITED] IS NOT IN DEFAULT AND THE LEASE REMAINS IN FULL FORCE AND EFFECT, [SINGH] GRANTS TO [STERLING UNITED] DURING THE FIRST TEN YEARS OF THE TERM, ONLY (PROVIDED [STERLING UNITED] HAS LEASED THE PROPERTY CONTINUOUSLY FROM THE DATE HEREOF UNTIL SUCH DATE), THE OPTION TO PURCHASE FROM [SINGH] THE REAL ESTATE (WHICH SHALL INCLUDE THE ADDITIONAL TENANT SPACE THAT WAS NOT INCLUDED AS PART OF THE LEASED PREMISES).

The Purchase Option also provides that "[t]he option price shall be the Fair Market Value of the Property as determined by an MAI appraiser . . . ."

The terms "Property," "Real Property" and "REAL ESTATE" are not defined in the Lease or its exhibits. The Purchase Option does refer to the leased premises

10

and, in that respect, the "Premises," for purposes of the Lease, is defined as "the convenience store portion of the property located at 1310 Canton Highway, Cumming, Georgia 30040, and more particularly described on *Exhibit 'A'* attached hereto and incorporated herein by reference."

Exhibit "A" shows a site sketch of property identified as "1310 Canton Road, Cumming, Georgia 30130." The sketch shows a number of buildings and structures, with the main building subdivided into sections designated as "Ravan's Food Market/On Mark Service Station," "Pump Canopy (Gasoline)," "Former Chiropractic Clinic," "ARC Inc.," and "Classic Cuts." Other structures on the property are identified as "Unit A," "Unit B," "Unit C," "Gasoline USTs," "Pump Canopy (Diesel & Kerosene)," and "Diesel & Kersosene USTs." The sketch indicates that the "Premises" includes that portion of the tract which is highlighted by cross marks. The highlighted portions of the sketch include the part of the main building associated with the service station, along with the pump canopies and fuel storage facilities.

We agree with Singh that this case is analogous to *Marshall v. Floyd*, 292 Ga. App. 407 (664 SE2d 793) (2008). In that case, the tenant leased a portion of a building but asserted the right under the lease to purchase the entire building and grounds. Id. at 410 (1). The lease afforded the tenant the right to purchase "the

11

property," but the term "property" was undefined in the purchase provision and the contract, and the purchase provision failed to identify the property by description, street address, or other means. Id. The lease contract referred to an attached legal description for the premises but did not refer to any legal description for the unidentified "property" in the purchase provision. Id. We concluded that "[b]ecause the purchase provision failed to contain any description identifying with sufficient certainty the quantity of the property to which it applied, the purchase provision was unenforceable as a matter of law." Id.

Here, as in *Marshall*, the *quantity* of the property to which the Purchase Option applies is not described with sufficient certainty. In considering whether the Purchase Option was sufficiently definite, in a pre-trial ruling the trial court found that the Lease was unambiguous as "there's no conceivable definition of the property that does not include the entire Exhibit A, which is attached to the contract." But we cannot agree. For one thing, the Lease contains a separate right of first refusal[4] which

_____

[4] As we have said, "[t]he distinction between a right of first refusal and an option is significant since only the holder of an option has the power to compel an unwilling owner to sell the property even when the property is not being offered on the market." *Marshall*, 292 Ga. App. at 409 (1). On the other hand, "the holder of a right of first refusal does not have that power and instead merely has the right to buy the property when the owner decides to sell." Id.

pertains to "THE FEE REAL PROPERTY MAKING UP THE PROPERTY, TOGETHER WITH ALL BUILDINGS, EQUIPMENT AND IMPROVEMENTS OWNED BY LANDLORD WHICH ARE HEREAFTER LOCATED ON THE PROPERTY, HEREINAFTER COLLECTIVELY THE 'FIRST REFUSAL PROPERTY.'" The property subject to the right of first refusal and the real estate subject to the Purchase Option are described differently, which suggests that they are not the same. See generally *Tyson v. McPhail Properties*, 223 Ga. App. 683, 689 (6) (478 SE2d 467) (1996) (option agreement would not have used two different terms in two sequential paragraphs to describe the same thing).

Further, the description of the "REAL ESTATE" subject to the Purchase Option is that it "SHALL INCLUDE THE ADDITIONAL TENANT SPACE THAT WAS NOT INCLUDED AS PART OF THE LEASED PREMISES." It is unclear from the Lease, including Exhibit "A," what the parties intended by "additional tenant space."

Another ambiguity is found in the condition to the Purchase Option: "PROVIDED [STERLING UNITED] HAS LEASED THE PROPERTY CONTINUOUSLY FROM THE DATE HEREOF UNTIL SUCH DATE." In that context, the reference to "PROPERTY" must refer to the Premises, as the parties

13

would have known that Sterling United did not lease the entire tract depicted on Exhibit "A." But when the Purchase Option later refers to the option price as the "Fair Market Value of the Property," in that context "Property" must refer to the real estate subject to the Purchase Option. And as to the "property" in which the leased premises was to be found, that property is identified as the tract shown on Exhibit "A" to the Lease. But the various references to property within the Purchase Option and the Lease are not such that it cannot be ascertained that the parties intended that the Purchase Option apply to the entire tract depicted on Exhibit "A" or some portion thereof.

After a review of the Lease, we can only conclude that, as to the Purchase Option, the Lease does not point to a particular parcel of land, either specifically or through a description providing a key to identification of that parcel. See *Plantation Land Co.*, 232 Ga. at 440 (IV) (noting that "parol evidence may be used to explain terms appearing in the description, but the description itself must clearly identify a particular parcel of land"). Compare *Swan Kang, Inc. v. Kang*, 243 Ga. App. 684, 688-689 (3) (534 SE2d 145) (2000) (holding that "the property's postal address was a legally sufficient description because it referred to a definite parcel whose boundaries presumably could be established through extrinsic sources").

14

Notwithstanding that the real estate subject to the Purchase Option is described to the extent that it includes the additional tenant space, that description only refers to a portion of the property subject to the Purchase Option. As to what the "REAL ESTATE" subject to the Purchase Option might be, the Lease does not say. And although Sterling United contends that both parties understood that Sterling United would have the right to purchase the entire property shown on Exhibit "A" to the Lease, parol evidence of the parties' intent could not supply the missing term as to the quantity of the property subject to the Purchase Option. See *Plantation Land Co.*, 232 Ga. at 440 (IV) (noting the "marked distinction between explaining an ambiguous description by parol evidence, and admitting parol evidence to supply a description") (citation and punctuation omitted).

In light of the foregoing, we conclude that the Purchase Option in the Lease was legally insufficient to be enforced through specific performance, and the trial court erred in finding otherwise and then entering a judgment requiring that the Purchase Option be specifically enforced.

3. Singh further contends that the trial court erred in entering a judgment for both specific performance and nominal damages for breach of contract. See *Investment Properties Co. v. Watson*, 278 Ga. App. 81, 87 (4) (a) (628 SE2d 155)

15

(2006) (finding that where plaintiff sought either specific performance or damages, an award of monetary damages in addition to an award of specific performance was an impermissible double recovery). But it appears that Sterling United sought damages for breach of contract apart from its specific performance claim. According to the Consolidated Pretrial Order and as represented by Sterling United at the charge conference, Sterling United was "asking for nominal damages for repairs that [Sterling United] did or damage caused by [Singh's] failure to make repairs." Accordingly, there was no impermissible double recovery for breach of the Purchase Option provision and specific performance.

4. Singh also contends that the trial court erred in entering a judgment incorporating the jury's award of attorney fees because the award included costs associated with defending Singh's claims. We agree.

The general rule is that "an award of attorney fees and expenses of litigation are not available to the prevailing party unless authorized by statute or contract." *Cary v. Guiragossian*, 270 Ga. 192, 195 (4) (508 SE2d 403) (1998). OCGA § 13-6-11 provides that "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow" expenses

16

of litigation. In its counterclaim, Sterling United asked for a recovery of attorney fees and costs in prosecuting the action because Singh had acted in bad faith and had been stubbornly litigious with respect to the underlying transaction. The trial court later charged the jury, consistent with OCGA § 13-6-11, that it could allow attorney fees on Sterling United's counterclaim if Singh had acted in bad faith or has been stubbornly litigious or had caused Sterling United unnecessary trouble and expense. "An award of attorney fees under OCGA § 13-6-11 will be affirmed if there is any evidence to support it." *City of Hoschton v. Horizon Communities*, 287 Ga. 567, 569 (3) (697 SE2d 824) (2010).

Sterling United argues that the fee award was authorized by OCGA § 13-6-6, which allows for the recovery of nominal damages "sufficient to cover the costs of bringing the action." An award of nominal damages may establish "prevailing party" status under a contractual fee-shifting provision, and "a recovery of only nominal damages is sufficient to support an award of attorney fees under OCGA § 13-6-11." (Citation and punctuation omitted.) *King v. Brock*, 282 Ga. 56, 57 (646 SE2d 206) (2007). But Sterling United does not show that an award of nominal damages also carries with it an automatic entitlement to a separate award of attorney fees.

17

Accordingly, we agree with Singh that the attorney fees in this case were sought and awarded under OCGA § 13-6-11.

In general, a defendant's expenses for defending against a claim are not recoverable under OCGA § 13-6-11. See *Canton Plaza Inc. v. Regions Bank, Inc.,* 315 Ga. App. 303, 310 (3) (732 SE2d 449) (2012); *Professional Consulting Svcs. of Ga., Inc. v. Ibrahim,* 206 Ga. App. 663 (426 SE2d 376) (1992). And as to its counterclaim for breach of contract and specific performance, Sterling United "cannot recover attorney's fees under OCGA § 13-6-11 unless [it] asserts a counterclaim which is an independent claim that arose separately from or after the plaintiff's claim." *Byers v. McGuire Properties,* 285 Ga. 530, 540 (6) (679 SE2d 1) (2009). Singh asserts that Sterling United could not recover any fees under OCGA § 13-6-11 because Sterling United asserted a compulsory counterclaim which was not independent from Singh's claims. In *Sanders v. Brown,* 257 Ga. App. 566, 570 (c) (571 SE2d 532) (2002), we explained that "[t]he award of expenses of litigation under OCGA § 13-6-11 can only be recovered by the plaintiff in an action under the language of the statute; therefore, the defendant and plaintiff-in-counterclaim cannot recover such damages where there is a compulsory counterclaim." In *Byers,* our Supreme Court later cited to *Sanders* for the standard to determine when a plaintiff-

18

in-counterclaim may recover attorney fees under OCGA § 13-6-11. *Byers*, 285 Ga. at 540 (6). Compare *Ballenger Corp. v. Dresco Mechanical Contractors*, 156 Ga. App. 425, 431 (1) (274 SE2d 786) (1980) (finding that where party asserts independent claims for recovery by way of counterclaim, "the simple denomination of one party as plaintiff and another as defendant should not dictate a possible award of attorney fees" and that "a 'race to the courthouse' theory of recovery" cannot be ascribed to the legislature); *Tri-State Consumer Ins. Co. v. LexisNexis Risk Solutions, Inc.*, 858 FSupp.2d 1359, 1372-1375 (II) (F) (5) (N.D. Ga. 2012) (criticizing *Sanders*).

Under the Civil Practice Act, "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." Under this Code section, and applying *Byers* and *Sanders*, we find that Sterling United's counterclaim for breach of contract for failing to make repairs and upon which Sterling United bases its attorney fees claim was clearly in the nature of a compulsory counterclaim and thus fees were not permitted for that claim under OCGA § 13-6-11. In addition, OCGA § 13-6-11 expenses of litigation, including attorney fees, "is limited to the amount of attorney fees

19

attributable solely to the [prevailing] claim[,]" (Citation and punctuation omitted.) *Forsyth County v. Martin*, 279 Ga. 215, 219 (2) (c) (610 SE2d 512) (2005), and for this reason also OCGA § 13-6-11 attorney fees were not recoverable on Sterling United claims for specific performance.[5] Accordingly, the fee award is reversed.

5. Singh contends that the trial court erred in excluding certain evidence on the grounds that it was irrelevant to Sterling United's claim for specific performance. In light of our finding that the Purchase Option was not enforceable by specific performance, this claim of error is moot.

6. Lastly, Singh contends that the trial court erred in ordering that Sterling United receive a credit, at closing, for rent it paid to Singh from July 2011, forward, without accounting for the value of money Singh would had received had the closing taken place in 2011. This portion of the trial court's judgment was necessarily predicated on its finding for Sterling United on its specific performance claim and cannot stand.

---

[5] Sterling United abandoned it claims for breach of restrictive covenant. Although it argues it presented that claim to the jury, it represented to the trial court "we're not going to claim damages for breach of the restricted covenant. . . . [W]e retain the right to enter evidence about it, to show waiver . . . but we're not looking for damages.

20

*Case No. A14A0441*

7. In its judgment awarding specific performance, the trial court ordered Singh

to sell the "property" to Sterling United on June 6, 2013.[6] After Singh appealed from

the judgment, Sterling United filed a motion for supersedeas bond under OCGA § 5-

6-46 (a). The trial court granted the motion and ordered that Singh post a bond in the

amount of $410,218.09 by the close of business on or before June 4, 2013. Singh

acknowledges that he did not obtain the supersedeas bond.[7]

When the sale ordered by the trial court failed to occur, Singh and Sterling

United filed cross-motions for contempt. The trial court denied Singh's motion, found

Singh to be in contempt, and, in addition, provided additional "clarification" of the

---

[6] Specifically, the trial court ordered the closing "occur 90 days from March 8, 2013."

[7] We do not know from the information supplied by the parties if Sterling United has successfully enforced the judgment, but that would not affect Singh's appeal in Case No. A13A2104. See *Crymes v. Crymes*, 240 Ga. 721 (242 SE2d 30) (1978) (holding that "[f]ailure of the appealing party to file a supersedeas bond simply means that the judgment of the trial court may be enforced and is no ground for dismissing the appeal"). And as "appellant[] ha[s] failed to comply with the order to post supersedeas bond, . . . the appellee was free to enforce the judgment at its peril pending a decision on appeal." *Florez v. State*, 311 Ga. App. 378, 383 (2) (715 SE2d 782) (2011).

21

Lease, including "[t]he 'property' for purposes of the option price does not include the business value." Singh appeals from these rulings.

We first consider whether Singh's claims are moot. Where "reversal of a trial court's judgment is of no practical benefit to the parties, any issues raised on appeal are rendered moot." (Citations and punctuation omitted.) *McWhorter v. Greene*, 221 Ga. App. 590, 591 (472 SE2d 135) (1996). However, "[i]f an appellant . . . will benefit by reversal of a case, his appeal is not moot." (Citation and punctuation omitted.) Id. With respect to the trial court's denial of Singh's motion to hold Sterling United in contempt, Singh contends that the trial court erred because Sterling United was not ready, willing, and able to purchase the property on June 6, 2013, in contravention of the trial court's previous order. Singh further argues that the trial court's "clarification" of the terms of the Lease amounted to an impermissible modification of the prior judgment. In light of our finding in Case No. A13A2104, a reversal of the trial court's order as to these rulings would have no practical benefit to Singh, and the issues raised are moot.

With respect to the trial court's finding that Singh was in contempt, in its underlying motion Sterling United argued that Singh had failed to provide it with certain information regarding a loan secured by the property, notwithstanding that in

22

its June 3, 2013 order the trial court had directed that Singh "is required to immediately provide lender information" to Sterling United, as well as "authorization for lender to release loan status information" to Sterling United. Following a hearing, the trial court found that Singh had failed to immediately provide the loan information and so granted Sterling United's motion that Singh be found in contempt. The trial court ordered that Singh could purge himself of "this finding of willful civil contempt by providing a full authorization to [Sterling United] so that a closing attorney has access to all of the loan account information." The trial court further ordered that Singh provide the information by "five (5) calender days from August 22, 2013," and that Singh's failure to do so "may result in the imposition of sanctions."

As the trial court's order exposed Singh to a possible award of sanctions, we cannot say that a reversal of the portion of the trial court's order finding Singh in contempt would have no practical benefit to Singh. Compare *Cagle v. PMC Dev. Co. of Ga.*, 233 Ga. 583, 584 (212 SE2d 765) (1975) ("once a contempt judgment has been complied with, or has been vacated, or has been rendered moot in any other manner, there is no remaining case or controversy for adjudication in the appellate court") with *Bankers Life & Cas. Co. v. Cravey*, 209 Ga. 274, 275 (71 SE2d 659)

23

(1952) (noting that "[t]his court has repeatedly held that one may be punished as for contempt for refusal to obey the order of the court notwithstanding that upon a review the order there disobeyed is, by the reviewing court, reversed"). Nevertheless, we disagree with Singh that he did not violate the trial court's order. A review of the transcript of the contempt hearing shows that on June 6, 2013, Singh only authorized his bank to release partial information about the loan at issue. Although Singh's argument focuses primarily on when he was required to provide the lender information and loan status authorization,[8] the trial court necessarily concluded, consistent with the evidence, that Singh was in violation of the court's previous order because he did not provide, and had not yet provided, the loan account information and authorized release, and it was this ongoing failure that exposed Singh to sanctions. Accordingly, Singh does not show that the trial court erred in finding him in contempt.

In sum, in Case No. A13A2104 we reverse the trial court's judgment with respect to the award of specific performance and attorney fees. The judgment is

---

[8] Singh maintains that he had until June 6, 2013, to provide the required loan information and authorization because he was served with the June 3, 2013 order by mail. See OCGA § 9-11-6 (e).

24

affirmed to the extent it incorporates the jury's award of nominal damages to Sterling United. The judgment in Case No. A14A0441 is affirmed.

*Judgment affirmed in part and reversed in part in Case No. A13A2104. Judgment affirmed in Case No. A14A0441. Andrews, P. J., and Dillard, J., concur.*

25