**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 19, 2017**

# In the Court of Appeals of Georgia

A17A0608. GRAYBILL v. ATTAWAY CONSTRUCTION & ASSOCIATES, LLC.

SELF, Judge.

In this contract dispute, homeowner Brannon Graybill ("Graybill") sued contractor Attaway Construction & Associates, LLC ("Attaway") for damages related to work Attaway performed during the remodeling of Graybill's residence. Following a bench trial, the Superior Court of Columbia County entered judgment in Attaway's favor, including an award of attorney fees pursuant to OCGA § 13-6-11. Graybill appeals and, for the reasons that follow, we affirm in part and reverse in part.

Evidence adduced at trial revealed that Graybill and Attaway entered into an October 1, 2014 contract for residential remodeling work at Graybill's residence. The contract listed the cost of the work as $175,000; Graybill testified that the $175,000

represented a comprehensive fixed price for the project,[1] while Attaway asserted that the project would cost "approximately $225,000 on a cost plus 12% basis." Attaway also stated that Graybill executed the contract to obtain a loan for $175,000 and that he would pay any difference between the contract price and the total cost out of pocket.

Based upon the parties' agreement, drawings were prepared and subsequently modified on multiple occasions. During the course of the remodeling project, Graybill and his wife chose more expensive and higher-quality materials than were originally budgeted. As the cost of the project escalated, and Attaway sought additional payments, the parties' relationship soured. Ultimately, Graybill paid Attaway $213,979 and paid $52,231.73 directly to some of Attaway's subcontractors. However, Graybill refused to pay two of Attaway's applications for payment totaling $43,540.05, after which Attaway issued a July 8, 2015 "Suspension of Construction for Non-Payment." On August 21, 2015, Graybill sued Attaway for breach of contract and negligent construction, and Attaway counterclaimed for, among other things,

[1] However, Graybill acknowledged that he knew the price would increase based upon changes to the scope of work he requested.

2

breach of contract, quantum meruit, fraud,[2] and attorney fees pursuant to OCGA § 13-6-11. Graybill waived his right to a jury trial and, following a bench trial, the trial court entered judgment in favor of Attaway for $43,540.05 in damages plus interest and $57,156.62 in attorney fees and expenses. This appeal followed.

1. In his first enumeration of error, Graybill contends the trial court erroneously refused his "right to present oral closing argument" and his right to a concluding argument. However, we need not consider Graybill's enumeration because he waived the alleged error.

Near the conclusion of the bench trial, the trial court asked counsel for both parties, "[d]o y'all want to argue it this afternoon, or what do you want – do you want to submit it, or do you want to send me a brief or what?" Graybill's counsel responded that he could complete his argument in "ten minutes" and that he had prepared two bench briefs for the trial court, while Attaway's counsel stated he had not seen the bench briefs and suggested that "each side submit their proposed findings and conclusions of law[;] [t]hat would be our argument." Graybill's counsel resisted Attaway's counsel's suggestion, saying "I would prefer not to. I'd prefer to argue it, Your Honor."

_____

[2] Attaway later voluntarily dismissed its fraud claim without prejudice.

3

What followed was an extended colloquy between counsel and the trial court concerning whether the parties wished to argue the case personally or by post-trial briefing. During that discussion, Graybill's counsel repeated his desire "to close today" rather than submit briefs in lieu of argument. The trial court responded that it would allow the parties to submit post-trial briefs "and that will stand for your argument, unless . . . someone objects," but added that "if you want to argue, I've got all night." Graybill's counsel then stated:

> [GRAYBILL'S COUNSEL]: Well, we're – we're going to do what you tell us to do. What are you telling us? Would you have preferred to do a bench
> brief?
> THE COURT: Without objection, then, what I'm going to ask you to argue – is to argue the case in the way of – of a letter –
> [GRAYBILL'S COUNSEL]: Okay.
> THE COURT: – or brief –
> [GRAYBILL'S COUNSEL]: Sure.
> THE COURT: – and incorporate – and that would incorporate your authority.
> [GRAYBILL'S COUNSEL]: May we put a limit on that?
> THE COURT: A page limit?
> [GRAYBILL'S COUNSEL]: Yes, sir.

However, Graybill's counsel then said, "Well, . . . I object then. I want to orally argue the case[,]" to which the trial court replied,

> THE COURT: Okay, argue it. That's fine, we'll stay and we'll argue it.
> [GRAYBILL'S COUNSEL]: I mean, you know, it's - - that's what I - - that's what I want to do.

4

THE COURT: And if you - - all right, you argue it, and then if you all - - all right, that will be fine. You argue it. I'll take care of everything after that.
[GRAYBILL'S COUNSEL]: Sure.

Attaway's counsel then asked to reserve argument in the form of a written brief, which led to additional discussion in view of Graybill's counsel's statement that he wanted to waive opening and reserve concluding argument. The trial court ultimately stated that

> [i]f either of you wants to argue the case, you have [the] absolute right to do it. So, if either of you is insisting on oral argument this afternoon, then I am going to allow either or both of you to do that. And I don't mind, then, giving you five days if you want to brief it after that. That suits me to a tee. That's fine. So with that advisory, or that communique, . . . [Graybill's counsel], what do you want to do?

Graybill's counsel stated, "I want to close it out today. I'd like to orally argue briefly. I'm going to keep it very brief." When Attaway's counsel elected to forego an oral argument in lieu of a post-trial brief, Graybill's counsel again complained that the proposed procedure would give Attaway "the last say in the case. . . ." Nevertheless, Graybill's counsel ultimately stated that, "I'll put it all in a letter, Judge, if we're going to do it that way. [. . .] But I'm going to put on the record that I object to this." The discussion concluded with the following exchange:

5

[GRAYBILL'S COUNSEL]: All right, I'll do it whatever way you want to, but just, you know, - -
THE COURT: All right.
[GRAYBILL'S COUNSEL]: - - I - -
THE COURT: I'll get briefs from you then.

One week later, the parties delivered letter briefs to the trial court.

In *Wilson v. Wilson*, our Supreme Court confirmed that "the right to closing argument exists even in civil, non-jury trials, but may be precluded when no factual issues exist *or when the parties waive the opportunity*." (Emphasis supplied.) 277 Ga. 801, 802 (1) (596 SE2d 392) (2004). See also OCGA § 9-10-186 (plaintiff in civil actions is entitled to opening and concluding arguments). Indeed, the right to argue "may be waived expressly or by conduct." (Citation omitted.) *Wilson*, 277 Ga. at 803 (1).

In this case, the trial court inquired of counsel for the parties whether they wanted to present an oral closing argument or submit arguments in a post-trial brief. While Graybill's counsel stated he wanted to present an oral closing argument, Attaway's counsel suggested submitting a post-trial brief in lieu of a closing argument. This initial disagreement spawned an extended discussion between the trial court and the parties, during which Graybill's counsel repeated his desire to present an oral closing argument. In fact, during the ongoing discussion, the trial court invited

6

Graybill's counsel to present oral argument on three occasions. After the trial court's third invitation, Graybill's counsel repeated that he wanted to present oral argument but also wanted to submit two bench briefs. Additional discussion ensued, during which Graybill's counsel stated to the trial court: (1)"we're going to do what you tell us to do"; (2)"[t]hen I'll put it in a letter, Judge, if we're going to do it that way"; and (3)"I'll do it whatever way you want to. . . ."

As a result, despite multiple invitations by the trial court, Graybill's counsel did not present oral argument and cannot now "be heard to complain of error induced by [his] own conduct, nor to complain of errors expressly invited by [him] during the trial of the case." (Citation omitted.) *Oglethorpe Power Corp. v. Estate of Forrister*, 332 Ga. App. 693, 699 (2) (b) (774 SE2d 755) (2015). "[N]o matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further." (Footnote omitted.) *Roberts v. First Ga. Community Bank*, 335 Ga. App. 228, 230 (1) (779 SE2d 113) (2015). See also *Davis v. Phoebe Putney Health Systems*, 280 Ga. App. 505, 506-507 (1) (634 SE2d 452) (2006) ("A party cannot participate and acquiesce in a trial court's procedure and then complain of it."). Accordingly, we conclude that Graybill

7

waived any error concerning closing arguments since he, despite multiple invitations by the trial court to present an oral closing argument, failed to do so and acquiesced in the trial court's suggestion to submit closing arguments by brief.

2. In two related enumerations of error, Graybill argues that the trial court's award of attorney fees to Attaway was improper and that, even if the award was appropriate, Attaway failed to present sufficient evidence to support its request for attorney fees. We agree that the trial court's award of attorney fees to Attaway pursuant to OCGA § 13-6-11 is not authorized under Georgia law.

Graybill's complaint alleged causes of action for breach of contract and negligent construction related to Attaway's remodeling work at Graybill's residence. In its answer to Graybill's complaint, Attaway included counterclaims for, among other things, breach of contract, quantum meruit, fraud, and attorney fees pursuant to OCGA § 13-6-11. At the conclusion of its case, Attaway's counsel offered, "in our place[,]" to state their attorney fees. After extensive discussion of another matter, Attaway's counsel stated "in our place that we have [. . .] attorneys [sic] fees and expenses of fifty thousand dollars." Attaway's counsel added that "[w]e charged hourly rates less than those charged by [Graybill's] counsel, so we submit that's a reasonable sum." Graybill's counsel did not object to Attaway's request for attorney

8

fees, but did request "the standard affidavit and backup time sheets so that I can at least see those[.]"

Attached to Attaway's counsel's affidavit in support of attorney fees were "time records kept in [counsel's] firm's billing system" reflecting work by "lawyers, paralegal, and law clerks. . . ." The records demonstrated "work on behalf of Attaway Construction in defending against the claim of Brannon Graybill, and in pursuing the Attaway Construction counterclaim. . . ." Attaway's counsel averred that the hourly rates shown in the records "are extremely reasonable for the Augusta market" and that the 378.83 hours billed to Attaway "also have been reasonable." While the time records identified the date of each time entry, the timekeeper's initials and billing rate, the number of hours worked and billed, and the monetary amount of the task performed, the records contain no description of the task performed or whether the task was related to Attaway's counterclaims. In response, Graybill argued only that Attaway's counsel's attorney fees were "[u]nreasonable [i]nsofar as the [t]otal [h]ours [s]pent are [e]xcessive." In its order, the trial court awarded Attaway "the reasonable attorney fees as proven by the affidavit of [Attaway's] counsel in the amount of $50,000.00."

(a) Graybill first argues that the trial court erred in awarding Attaway attorney fees because "a plaintiff-in-counterclaim cannot recover those fees when its counterclaim arises out of the same transaction underlying the complaint." We agree.

"The general rule is that an award of attorney fees and expenses of litigation are not available to the prevailing party unless authorized by statute or contract." (Citation and punctuation omitted.) *Singh v. Sterling United, Inc.*, 326 Ga. App. 504, 512 (4) (756 SE2d 728) (2014). To that end, OCGA § 13-6-11 provides that

> [t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

Furthermore, "[t]he award of expenses of litigation under OCGA § 13-6-11 can only be recovered by the plaintiff in an action under the language of the statute; therefore, the defendant and plaintiff-in-counterclaim cannot recover such damages where there is a compulsory counterclaim." *Singh*, 326 Ga. App. at 513 (4) (citing *Sanders v. Brown*, 257 Ga. App. 566, 570 (c) (571 SE2d 532) (2002)). See also *Byers v. McGuire Properties*, 285 Ga. 530, 540 (6) (679 SE2d 1) (2009) (plaintiff-in-counterclaim "cannot recover attorney's fees under OCGA § 13-6-11 unless [it]

10

asserts a counterclaim which is an independent claim that arose separately from or after the plaintiff's claim").[3] "Under the Civil Practice Act, a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." (Punctuation omitted.) *Singh*, 326 Ga. App. at 513 (4) (citing OCGA § 9-11-13 (a)).

With these principles in mind, we conclude that Attaway's counterclaims for breach of contract and quantum meruit arising from Attaway's work at Graybill's residence, and which formed the basis for the trial court's award of attorney fees, were "clearly in the nature of . . . compulsory counterclaim[s] and thus fees were not permitted for [those] claim[s] under OCGA § 13-6-11." *Singh*, 326 Ga. App. at 513 (4). It follows that the trial court erred in granting Attaway attorney fees based upon its counterclaims and, therefore, we reverse that portion of the trial court's order

---

[3] We decline Attaway's veiled invitation to adopt the reasoning of *Tri-State Consumer Ins. Co. v. LexisNexis Risk Solutions*, 858 FSupp.2d 1359 (N.D. Ga. 2012) criticizing, but ultimately following, *Byers*. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents.").

11

awarding Attaway $50,000 in attorney fees.[4] See *Byers*, 285 Ga. at 540 (6); *Singh*, 326 Ga. App. at 513 (4).

(b) In view of our holding in Division 2 (a), supra, we need not consider Graybill's enumeration of error concerning the alleged insufficiency of the proof of Attaway's attorney fees.[5] See, e.g., *Premier Cabinets v. Bulat*, 261 Ga. App. 578, 582 (5) (583 SE2d 235) (2003).

3. Next, Graybill asserts that the trial court erred in awarding damages for both of the mutually exclusive remedies of breach of contract and quantum meruit. We do not agree.

---

[4] While acknowledging the applicability of *Byers*, Attaway's sole argument in response to Graybill's enumeration is that Graybill failed to preserve the issue for appeal by timely objecting to Attaway's request for attorney fees. However, Graybill's argument "is that the actual award itself is improper as a matter of law." *First Union Nat. Bank v. Big John's Auto Sales*, 203 Ga. App. 797, 799-800 (6) (417 SE2d 416) (1992). In that vein, "[t]he recoverability of damages is dependent upon the applicable law and evidence." (Footnote omitted.) *Premier Cabinets v. Bulat*, 261 Ga. App. 578, 583 (5) (583 SE2d 235) (2003). And in this case, "the award of attorney fees . . . cannot be upheld as authorized pursuant to OCGA § 13-6-11." Id. Accordingly, the cases upon which Attaway relies concerning waiver are inapposite. Compare *Benchmark Builders v. Schultz*, 289 Ga. 329, 330 (1) (711 SE2d 639) (2011) (Court of Appeals erred in relying on waiver to affirm award under OCGA § 13-6-11).

[5] Similarly, we need not decide whether Attaway "set forth any facts showing that [Graybill] [has] been stubbornly litigious." *Byers*, 285 Ga. at 540 (6).

12

In its answer and counterclaim, Attaway included alternate causes of action for breach of contract and quantum meruit. During trial, an Attaway representative testified that it sought $43,540.05 based upon the parties' contract and Graybill's failure to satisfy two of Attaway's applications for payment. Yet in its post-trial brief, Attaway argued that "[w]hether . . . the written contract document is binding upon the parties or not, Georgia law dictates that Attaway Construction is entitled to the cost of labor and materials in the amount of $43,540.05 that has been provided and billed to [Graybill], but for which [Graybill] has failed to pay." The trial court "conclude[d] that [Attaway] is entitled to recover damages from [Graybill] on the theories of breach of contract and in quantum meruit." Ultimately, without identifying the legal theory supporting the judgment, the trial court ordered that Attaway "shall recover damages on its counterclaim against [Graybill] in the amount of $43,540.05."

"It has long been the law in Georgia that although a party may plead in alternative counts, no recovery may be had in quantum meruit when a contract governs all claimed rights and responsibilities of the parties." *Holder Constr. Group v. Ga. Tech Facilities*, 282 Ga. App. 796, 801 (4) (640 SE2d 296) (2006) (citing *Choate Constr. v. Ideal Electrical Contractors*, 246 Ga. App. 626, 630 (4) (541 SE2d 435) (2000)). Similarly, while it is true that "a party may pursue inconsistent

13

remedies, he is not permitted a double recovery of the same damages for the same wrong. He is entitled to only one satisfaction of the same damages." (Citation and punctuation omitted.) *Marvin Nix Dev. Co. v. United Community Bank*, 302 Ga. App. 566, 568 (692 SE2d 23) (2010). See also *Pope v. Professional Funding*, 221 Ga. App. 552, 555 (2) (472 SE2d 116) (1996) ("Although [the lender] could maintain its action both on breach of contract and conversion theories, it could not obtain a double recovery and was required to elect its remedy."). As a result, "while the claimant, or counterclaimant as in this case, is not required to make an election between inconsistent remedies prior to the verdict, he must make, and be given the opportunity to make, an election prior to the formulation and entry of judgment." *UIV Corp. v. Oswald*, 139 Ga. App. 697, 699 (229 SE2d 512) (1976). Nevertheless, although an election of remedies should be made before the entry of judgment, "we [will] find no reversible error in the failure to make such an election [where] there was no risk of double recovery." *All Risk Ins. Agency v. Belk*, 191 Ga. App. 576, 577 (1) (382 SE2d 361) (1989). Compare *UIV*, 139 Ga. App. at 699.

Here, the trial court "conclude[d] that [Attaway] is entitled to recover damages from [Graybill] on the theories of breach of contract and in quantum meruit[,]" but the trial court's award of $43,540.05 did not identify which of these two incongruent

14

causes of action supported its award. Irrespective of the support for the trial court's finding, we conclude that the trial court did not award Attaway a double recovery. During the trial, Attaway claimed damages of $43,540.05 based upon the parties' contract, while its post-trial brief stated that "[w]hether . . . the written contract document is binding upon the parties or not, Georgia law dictates that Attaway Construction is entitled to *the cost of labor and materials in the amount of $43,540.05* that has been provided and billed to [Graybill], but for which [Graybill] has failed to pay."[6] (Emphasis supplied.) In addition, we note that neither Graybill in the present appeal nor Attaway by cross-appeal challenged the trial court's entry of judgment in the amount of $43,540.05; rather, Graybill's argument focuses upon the trial court's inconsistent judgment and the alleged need for Attaway to elect a remedy, not upon the fact that a remedy in Attaway's favor was proper or that the amount of the judgment awarded was not supported by the evidence.[7] To that end, the parties do

---

[6] Similarly, Attaway argues in its briefing to this Court that "[w]hether [Graybill] is liable under the theory of quantum meruit, breach of contract, or both, the amount of damages owed to [Attaway] is the same."

[7] Indeed, Graybill states he "does not challenge the factual findings of the trial court. . . ." And yet, Graybill's opening brief invites this Court to vacate the trial court's judgment and "remand the case for Attaway to make [an] election of remedies and a new judgment to be entered thereon[,]" which would give Graybill "the right to appeal the new judgment as to the remedy elected." To the contrary, if, as Graybill

15

not cite any evidence to warrant a measure of damages other than $43,540.05. In short, then, regardless of the cause of action, the trial court awarded a single, unchallenged recovery of $43,540.05. Therefore, under the unique circumstances of this case, we conclude that "there was no risk of double recovery" and that an election of remedies was unnecessary. See *All Risk*, 191 Ga. App. at 577 (1). To hold otherwise would elevate form over substance. Cf. *Thomas v. State*, 324 Ga. App. 898, 900-901 (752 SE2d 67) (2013) (despite single recovery, "[Graybill] is, in fact, relying simply on the absence of a 'formal [election of remedies]' – the elevation of form over substance").

4. Finally, Graybill contends that the trial court should have referred his post-trial motion to recuse the trial judge to another judge for review because the trial

---

appears to suggest, the trial court erred in awarding damages based upon breach of contract or quantum meruit, Graybill was required to enumerate as error any arguments for reversal in the present appeal instead of attempting to procure a proverbial second bite at the appellate apple. In view of Graybill's failure to enumerate these alleged errors herein, any such error has been waived. See *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999) ("The appellate court is precluded from reviewing the propriety of a lower court's ruling if the ruling is not contained in the enumeration of errors."); *Dewberry v. State*, 294 Ga. App. 358, 359 (670 SE2d 150) (2008) (citing *Hodgkins v. Marshall*, 102 Ga. 191, 199 (29 SE 174) (1897)) (failure to enumerate errors upon a first appeal waives the right to enumerate them later).

judge failed to disclose a familial relationship with Attaway's co-counsel. See Uniform Superior Court Rule 25.3. We discern no error.

Almost three weeks after the conclusion of the bench trial, and one week after the trial court executed its judgment, Graybill allegedy discovered through "internet research" that the trial judge was related by marriage to Attaway's co-counsel. Specifically, Graybill alleged that the trial judge's daughter is married to Attaway's co-counsel's brother. Graybill's sources for the "internet research" included the trial judge's wife's Facebook account, which included "links to photographs" of Attaway's co-counsel's family, and a birth announcement identifying the trial judge and his wife as the grandparents of their daughter's newborn son. As a result, Graybill averred that he "believe[d] that [the trial judge] cannot be impartial and that bias and prejudice exists in favor of [Attaway] and against me." Graybill promptly filed a motion to recuse the trial judge and supported his motion with affidavits. Without referring the motion to recuse to another judge, the trial court denied Graybill's motion.

While the parties agree that the alleged relationship between the trial judge and Attaway's co-counsel does not fall within the prohibited degree of consanguinity,[8] see OCGA § 15-1-8 (a) (2), Graybill nevertheless asserts that the familial relationship raises a specter of bias and partiality and that the trial court should have referred the motion to another judge for review following his failure to disclose the familial relationship. We are not persuaded. "In Georgia, both OCGA § 15-1-8 and Canon [2][[9]] of the Georgia Code of Judicial Conduct are applicable when the issue of judicial recusal is considered." *Mayor & Aldermen of the City of Savannah v.*

---

[8] OCGA § 15-1-8 (a) (2) precludes a judge from presiding over in matter in which the judge is related within the third degree of consanguinity "to any party interested in the result of the case. . . ."

> The civil law is computed by counting from one of the persons up to the common ancestor, and then down again to the other person. [. . .] Under the civil law, the correct method of computation is to count the 'steps' or generations from one ancestor to the next counting each 'step' or generation as one degree, and not to count each ancestor as a degree.

(Citations and punctuation omitted.) *Cheeks v. State*, 234 Ga. App. 446, 449 (3) (507 SE2d 204) (1998). See also *Eaton v. Grindle*, 236 Ga. 324, 325 (223 SE2d 670) (1976)).

[9] The Code of Judicial Conduct was revised effective January 1, 2016. The provisions of Canon 2.11 were previously contained in Canon 3E (1). See *Post v. State*, 298 Ga. 241, 244 (1) (779 SE2d 624) (2015).

18

*Batson-Cook Co.*, 291 Ga. 114, 115 (728 SE2d 189) (2012). OCGA § 15-1-8 (a) (2015) provides, in relevant part, that

> [n]o judge or Justice of any court . . . shall:
>
> (1) [s]it in any case or proceeding in which he is pecuniarily interested;
>
> (2) [p]reside, act, or serve in any case or matter when such judge is related by consanguinity or affinity within the third degree . . . to any party interested in the result of the case or matter; or
>
> (3) [s]it in any case or proceeding in which he has been of counsel, nor in which he has presided in any inferior judicature, when his ruling or decision is the subject of review, without the consent of all parties in interest.

Canon 2.11 (A) states that "[j]udges shall disqualify themselves in any proceeding in which their *impartiality* might reasonably be questioned. . . ." (Emphasis supplied.) "The comprehensive concern for judicial impartiality found in Canon [2.11] provides a broader rule of disqualification than does OCGA § 15-1-8." (Citations omitted.) *Batson-Cook*, 291 Ga. at 121 (2) (b) (ii). To that end, Canon 2.11 "is an inclusive catch-all provision for analysis of alleged disqualifying judicial conduct and sets a general standard that the appearance of partiality requires recusal, followed by

19

specific examples of disqualifying conditions." (Citation and punctuation omitted.) Id. In that regard, "[w]e have construed the phrase 'impartiality might reasonably be questioned' to mean whether a fair-minded and impartial person would have a reasonable perception of a judge's lack of impartiality based upon objective facts set forth in the affidavit or reasonable inferences therefrom." (Citation omitted.) Id.

> Moreover, the alleged bias must be of such a nature and intensity to prevent the complaining party from obtaining a trial uninfluenced by the court's prejudgment. To warrant disqualification of a trial judge the affidavit supporting the recusal motion must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.

(Citation omitted.) *Rice v. Cannon*, 283 Ga. App. 438, 443 (2) (641 SE2d 562) (2007).

To enforce these provisions, motions to recuse or disqualify judges are governed by Uniform Superior Court Rule 25, which requires motions to recuse be timely filed, in writing, and supported by "accompanying affidavit(s) which shall fully assert the facts upon which the motion is founded." USCR 25.1.

> The affidavit shall clearly state the facts and reasons for the belief that bias or prejudice exists, being definite and specific as to time, place, persons and circumstances of extra-judicial conduct or statements,

20

which demonstrate either bias in favor of any adverse party, or prejudice toward the moving party in particular, or a systematic pattern of prejudicial conduct toward persons similarly situated to the moving party, which would influence the judge and impede or prevent impartiality in that action. Allegations consisting of bare conclusions and opinions shall not be legally sufficient to support the motion or warrant further proceedings.

USCR 25.2. When presented with a motion to recuse, "the judge shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted." USCR 25.3. "If all three conditions precedent set forth in USCR 25.3 are not met, the trial judge shall deny the motion on its face as insufficient, and there is no need for the trial judge to assign the motion to another judge to hear." *Gibson v. Decatur Fed. S & L Assn.*, 235 Ga. App. 160, 166 (3) (508 SE2d 788) (1998).

In this case, we conclude that Graybill's affidavit was legally insufficient and, as a result, the trial court did not err by denying Graybill's motion to recuse. The substance of Graybill's affidavit comes from apparent Facebook posts – which are not part of the record on appeal – showing family photographs and a birth announcement

21

for the trial judge's grandson. Not only do these facts fail to implicate the prohibited degree of consanguinity, see OCGA § 15-1-8 (a) (2), but we do not find that "a fair-minded and impartial person would have a reasonable perception of a judge's lack of impartiality based upon objective facts set forth in the affidavit or reasonable inferences therefrom." *Batson-Cook*, 291 Ga. at 121 (2) (b) (ii). Nor does "the affidavit supporting [Graybill's] recusal motion . . . give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." (Citation omitted.) *Rice*, 283 Ga. App. at 443 (2). At best, Graybill's motion and the supporting affidavit suggest that the trial court erred by failing to disclose a familial relationship that is *not* within the prohibited degree of consanguinity. This is not sufficient.[10]

[10] Notwithstanding the trial court's determination "that the motion [to recuse] [was] timely filed[,]" this Court is troubled by the timing of Graybill's motion to recuse, which came on the heels of the trial court's judgment in Attaway's favor. Cf. *Moran v. State*, 293 Ga. App. 279, 280 (1) (a) (666 SE2d 726) (2008) (in context of juror disqualifications pursuant to OCGA § 15-12-135 (a), "[w]here it appears that the party having cause to complain either knew of the relationship, *or could have discovered it by the timely exercise of ordinary diligence*, and remained silent, that party will be presumed to have waived the disqualification.") (emphasis supplied); *Von Hoff v. Carmichael*, 204 Ga. App. 760, 762 (3) (420 SE2d 643) (1992) (party took "chances on a favorable outcome of the trial and only after an adverse verdict was returned did she file a proper motion to recuse[;] [t]his is precisely the type of practice which the timeliness requirement of Rule 25.1 is designed to guard against"). To that end, noticeably absent from Graybill's affidavit is mention of any investigation of the trial judge's connections or relationships upon the original assignment of the case to the trial judge. See generally *Moran*, 293 Ga. App. at 280

Accordingly, in view of Graybill's failure to demonstrate that recusal would be warranted by the facts presented in his affidavit if taken as true, we find no error in the trial court's threshold denial of Graybill's motion.[11] See *Gibson*, 235 Ga. App. at 166 (3).

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Ray, J., concur.*

---

(1) (a); *Von Hoff*, 204 Ga. App. at 762 (3). See also *BITT Intl. Co. v. Fletcher*, 259 Ga. App. 406, 411 (5) (577 SE2d 276) (2003) (judge's lack of impartiality "is not based upon the perception of either interested parties or their lawyer-advocates, seeking to judge shop, to gain a trial advantage, or to overturn an unfavorable judgment, because their credibility is suspect from self-interest.") (physical precedent only); *Baptiste v. State*, 229 Ga. App. 691, 694 (1) (494 SE2d 530) (1997).

[11] As a result, we need not consider Graybill's argument that the trial court's order denying his motion to recuse demonstrated bias. See *Post v. State*, 298 Ga. 241, 256-257 (3) (b) (779 SE2d 624) (2015); *Isaacs v. State*, 257 Ga. 126, 128 (355 SE2d 644) (1987).

23